674 So.2d 1184 (1996)
David BLUE
v.
STATE of Mississippi.
No. 93-DP-00534-SCT.
Supreme Court of Mississippi.
February 15, 1996.
Rehearing Denied June 6, 1996.
*1191 Solomon C. Osborne, Greenwood, for Appellant.
Michael C. Moore, Attorney General, Marvin L. White, Jr., Assistant Attorney General, Leslie S. Lee, Sp. Asst. Attorney General, Jackson, for Appellee.
En Banc.
SMITH, Justice, for the Court:
David Blue appeals from the Circuit Court of Leflore County his conviction of capital murder of Mary Turntine committed during the course of (1) the sexual penetration of Turntine's anus with a baseball bat, (2) the penetration of Turntine's anus with his penis, and (3) armed robbery of Turntine's purse and firearm. Blue, a seventeen year old at the time of the crime, was sentenced to death on the capital murder charge, and thirty years for each of the other charges. Blue appeals to this Court raising twenty-five assignments of error:
In reviewing these assignments we take note that Blue failed to raise some of these issues in the lower court and on other issues he failed to bring them to the court's attention by an appropriate, timely objection. This Court, in Foster v. State, 639 So.2d 1263, 1270 (Miss. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1365, 131 L.Ed.2d 221 (1995) stated:
[i]f no contemporaneous objection is made, the error, if any, is waived. This rule's applicability is not diminished in a capital case. Cole v. State, 525 So.2d 365, 369 (Miss. 1987), cert. denied, 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 348 (1988); Irving v. State, 498 So.2d 305 (Miss. 1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 826 (1987); Johnson v. State, 477 So.2d 196 (Miss. 1985), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986); In re Hill, 460 So.2d 792 (Miss. 1984); Hill v. State, 432 So.2d 427 (Miss. 1983), cert. denied, 464 U.S. 977, 104 S.Ct. 414, 78 L.Ed.2d 352 (1983).
Although this Court need not look further after finding a procedural bar, this Court also, alternatively, may review the merits of the underlying claim knowing that any subsequent review will stand on the bar alone. The Fifth Circuit Court of Appeals has addressed this issue in Sawyers v. Collins, 986 F.2d 1493, 1499 (5th Cir.1993), stating:
On application for the writ of habeas corpus, federal courts will not review a state court's holding on a federal law claim ... if that holding rests upon a state law ground which is both independent of the merits of the federal claim and adequate to support the state court's judgment. Harris v. Reed, 489 U.S. 255, 260-63, 109 S.Ct. 1038, 1042-43, 103 L.Ed.2d 308 (1989). Consequently, "[w]hen a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." Ylst v. Nunnemaker, 501 U.S. 797, 801, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991) (citing Wainwright v. Sykes, 433 U.S. 72, 87-88, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977); Murray v. Carrier, 477 U.S. 478, 485-92, 106 S.Ct. 2639, 2643-48, *1192 91 L.Ed.2d 397 (1986). Furthermore, where a state court finds that a federal claim is procedurally barred, but goes on to reach the merits of that claim in the alternative, the state court's reliance on the procedural default still constitutes an independent and adequate state ground which bars federal habeas review.
Further, the United States Supreme Court in Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) stated:
The mere existence of a basis for a state procedural bar does not deprive this Court of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case... .
If the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent grounds, we, of course, will not undertake to review the decision.
Therefore, this Court will apply the procedural bar to each issue waived by Blue. Alternatively, we address each of those issues on the merits. A thorough review of all issues reveals none to be meritorious. We, therefore, affirm Blue's conviction and sentence of death for the capital murder of Mary Turntine. We also affirm Blue's convictions and sentences for sexual battery and armed robbery.

FACTS
On October 14, 1992, David Blue was indicted in the Leflore County Circuit Court for the commission of capital murder during the course of the sexual battery and armed robbery of Mary Turntine (Turntine). The murder occurred between 11:30 p.m. and 12:30 a.m. on June 6, 1992. The body was found laying between houses located at 104 and 106 Jackson Street in Greenwood. Blue was charged on the first count of sexual battery for inserting a bat into Turntine's anus against her will and without her consent or at a time when she was physically helpless. On the second sexual battery count, he was charged with penetrating Turntine's anus with his penis. On the armed robbery count, Blue was charged with using a bat while stealing Turntine's purse, its contents, and her firearm. Blue was seventeen years old at the time of his arrest.
At 5:30 p.m. on June 6, 1992, Blue gave the following statements to Greenwood police officer Charlie Barr:
Last night myself, Freddie Outlaw, a/k/a, Redman, were standing out in front of Claudine's on Howard and Gibbs. A fight broke out inside the place. Then me, Redman and J.J. McGlothin ran up in the place and Lonzo and another dude were fighting and a girl was kicking on Lonzo. I ran over there and pushed her out the way and told her to get up off of him. She got back. Then we got Lonzo up and went out the place and I saw this woman walking down Howard St., towards the Chinaman Store. She kept straight down Howard St., to Jackson St., and then she made a left in the 100 Block of Jackson St., going towards the under pass. That's when I ran up behind her and hit her in the back of the head. She was going down to the ground on her knees and then she reached in her bosom and got the pistol out of there and then she shot towards me and I hit her again with the bat, that I had gotten from Redman, in the front. I hit her hard and then she passed out. I picked her up off the ground and carried her over in the alley between two houses on Jackson St. I laid her on the ground. I pulled her underclothes down and I got the wooden baseball bat and I took the skinny part and stuck it up in her bootyhole. She came to and tried to get up and I hit her again in the head again and she passed out again. Then I had fun. I had sex in her booty. I really don't know how many times I hit her while she was on the ground, but I know it was more than twice. Then I went over there and got her pistol. It was laying beside the big purse that had some design on it, over by where I hit her at first. Then I got the .22 pistol, and I looked in the purse, but there wasn't any money in it. There was a lot of papers in it and I took the purse and went to the railroad tracks and crossed over the railroad tracks and crossed over to the other side of the underpass and walked down *1193 beside the underpass onto Scott St., and I threw the purse over there by the fence by the underpass. Then I walked over on Vardaman St., to Sister Dot's house and I went in there and washed the blood off the bat that I used to hit the lady with. Blood was on my socks and on my shirt and pants. I had on a red shirt and dark navy blue pants. I exchanged shirts with Joe Taylor, my cousin, a/k/a Peanut. Then I left and left the bat there and I walked over in Baptist Town and went to the Chinaman Store across from the washeteria, which is the street right down by the railroad and I threw the pistol away. Then I came back to Sister Dot's house and I got the bat and I carried it with me around to C.J.'s Place and I saw Steve Clay and I told him to hold the bat until I came out and I went in C.J.'s, where my uncle was. Redman called me outdoors and he had the wooden brown bat. Redman told me to lets go to Double Quick and steal something to eat and I told him no and I went in there where my uncle was. While I was over to Sister's Dot the first time I showed Joe Taylor, Robert Lee Davis, Cornelius Cummings and Annette Cummings the .22 pistol. I walked to the back door and shot it in the air. They said I was crazy and I told them wasn't nobody crazy. When I first got to the house with all the blood on me they asked me what happened. I told them I had gotten in a fight with two dudes. I told them a dude had pulled a gun on me and I took the gun away from him. That was not the truth, but what I've told in my statement is true. The last time I saw the bat Redman and Willie Crawford had it and the bat that Redman brought upto [sic] the police station was not the bat. The type of bat that I had was brown and a wooden bat ... I did not know this lady and this was my first time seeing her. I don't know why I did it. I just was mad and ran and caught the lady and started beating the lady with the bat. I was still mad and I was ready to kill somebody else. I just calmed down this morning. I drank some Gin. I don't know why I was mad and I lost control of myself.
At 7:30 p.m. on June 7, 1992, Blue gave a similar statement of the events to officers Andrew Cates and Terry Sanford. In addition to the statement to police officers set forth above, Blue made the following statements to other individuals. Blue and his friends were at Claudine's Place drinking between 9:00 and 10:00 p.m., and remained there until 11:00 p.m. or 12:00 a.m. He thereafter followed Lonzo and Redman outside. Lonzo went back into the cafe and Redman asked him if he wanted to rob somebody. Blue told him that it was up to them. After the fight in the bar, Redman ran home and got his bat. When Redman returned, he said "Lets go rob somebody," to which Blue responded "Okay." Redman then gave Blue the bat. It was at this time that Blue saw Turntine walking down the street. Blue stated:
[A]ll three of us were right up behind her and that's when I hit her in the back of the head with the bat. She fell to her knees and went down in her bosom and came up with the pistol and then she shot once and Freddie [Redman] and Lonzo turned around and started running and left me there by myself. I hit her in the front of her forehead with the bat and she passed out.
After he dragged her in the alley and she began to come to, he hit her twice in the front of the head with the bat. He thereafter had sex with her for ten minutes before realizing that she was dead. Blue left the scene and arrived at Cornelius Cummings' house where, he put his shirt and socks in their dirty clothes. Cornelius, Annette Cummings, Joe Taylor, Robert Davis, Mano, and Rosemary Robinson were all present at the house. Blue informed them that he had been involved in a fight. They asked him what he had in his pocket and he responded that it was a pistol. Blue disposed of the gun in some weeds behind the Chinaman store and thereafter went to C.J.'s cafe carrying the bat with him.
Blue was convicted on all three counts. The facts of the trial are more fully set forth within this opinion. At trial, Blue was represented by W.S. Stuckey, Jr. and Whitman Mounger. On April 2, 1993, Blue was sentenced *1194 by the jury to the death penalty on the capital murder charge. The trial judge imposed a sentence on Blue of thirty years for the sexual battery count, and thirty years for the armed robbery count. A motion for new trial was filed on April 12, 1993, and was subsequently denied on April 27, 1993. Blue filed a notice of appeal to this Court on May 6, 1993. On June 15, 1993, Solomon Osborne was substituted as defense counsel.

DISCUSSION OF LAW

I. WHETHER DAVID BLUE'S TRIAL ATTORNEYS' FAILURE TO FULLY UTILIZE AVAILABLE MITIGATION EVIDENCE WAS INEFFECTIVE ASSISTANCE OF COUNSEL DEPRIVING BLUE OF RIGHTS SECURED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE 3 §§ 14, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION OF 1890.
The State argued at trial that "[t]his is not a habitual offender case, and it's my understanding that life in this case does not mean life and that the State would be prohibited from arguing parole, and defense counsel should likewise be prohibited from arguing day-to-day life." Blue's counsel responded that he understood that the Supreme Court had been "around and around about that." Defense counsel further stated "I think I know what the law is," and declared that he had no objection.
Clinical psychologist Dr. Gilbert MacVaugh evaluated Blue and testified during the penalty phase of trial. He stated that Blue had a learning disability that required him to be placed in a special education program. Based on intelligence test results, Dr. MacVaugh testified that Blue was mildly mentally retarded, had a non-verbal IQ of 67, a verbal IQ of 69, and suffered from a conduct disorder. Dr. MacVaugh stated that Blue was capable of knowing right from wrong. It was further Dr. MacVaugh's belief that Blue's behavioral traits were unaltered by his repeated incarceration as "[h]e seems to have demonstrated an inability to properly learn from punishment by incarceration." Dr. MacVaugh opined that even with treatment, Blue's chances of recovery from mental retardation, chemical abuse, and conduct problems were not favorable.
During deliberations, the jury sent a note to the court inquiring: "[w]hat exactly does life imprisonment mean? Will he be eligible for parole with this sentence?" The court stated that its proposed answer was that the law will not allow it to define life imprisonment. The State commented that it would prefer an answer that life means ten years. Blue's counsel objected to any answer other than that to which the jury had been previously instructed. Accordingly, the court wrote back to the jury "[t]he law will not allow me to define `life imprisonment' for you. Please continue your deliberations."
Blue now argues that the jury was unaware of what "life imprisonment" meant as evidenced by their note to the court. He argues that he was entitled to inform the jury that he would be required to serve thirty years, or until he was forty-eight, before he was eligible for parole. Blue cites Davis v. State, 512 So.2d 1291 (Miss. 1987), where this Court stated:
[T]he sentencer cannot be precluded from considering as a mitigating factor, any aspect of a defendant's character of record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.
Id. at 1293 (citations omitted); see also Turner v. State, 573 So.2d 657 (Miss. 1990). In Turner, this Court held that the jury should be instructed that a defendant's habitual offender status makes him ineligible for parole as this information provides the jury with "all possible relevant information about the individual defendant whose fate it must determine." Id. at 674; See also Berry v. State, 575 So.2d 1 (Miss. 1990) (jury should have been informed that defendant was a habitual offender who was ineligible for probation or parole before deciding whether to sentence him to life imprisonment or death); Mackbee v. State, 575 So.2d 16 (Miss. 1990) (failure to instruct jury that defendant was an habitual offender in a capital murder case may have erroneously implied to jurors that he could *1195 receive parole if sentenced to life); Ladner v. State, 584 So.2d 743 (Miss. 1991); Russell v. State, 607 So.2d 1107 (Miss. 1992).
Blue argues that the jury was unaware of what "life imprisonment" meant as evidenced by their note to the court during deliberations in the penalty phase of trial. Blue claims the note evinces that the jury was not of the opinion that a life sentence meant that the defendant will never be back on the street. Blue's failure to argue this theory to the jury or to request an instruction offends neither Davis nor Turner.
Blue further argues that counsel's failure to request a jury instruction indicating the length of time he would have to serve prior to being eligible for parole was ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) as counsel simply did not know the law. As authority for this argument, Blue cites Leatherwood v. State, 473 So.2d 964, 968 (Miss. 1985) (case was remanded to the trial court on a hearing of ineffective assistance of counsel where counsel allegedly erroneously informed the defendant that the State would be limited in the evidence it could present during the sentencing phase if he pled guilty to murder).
Blue contends that the failure to inform the jury that he would not be eligible for parole for thirty years prejudiced him because counsel was not able to effectively utilize Dr. MacVaugh's testimony regarding recovery from his conduct disorder. Blue asserts that Dr. MacVaugh explained that his conduct disorder would burn out by the time Blue was age forty-five, three years before his first parole eligibility date.
If Blue is to be successful on his ineffective assistance of counsel claim, he must satisfy the two-pronged test set forth in Strickland, and adopted by this Court in Stringer v. State, 454 So.2d 468 (Miss. 1984). Blue must prove (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. Stringer, 454 So.2d at 476. The burden of proving both prongs of the test is on the defendant. Id., McQuarter v. State, 574 So.2d 685, 687 (Miss. 1990). Furthermore, the defendant must show that there is a reasonable probability that but for the errors, the outcome of the case would have been different. Nicolaou v. State, 612 So.2d 1080, 1086 (Miss. 1992); Ahmad v. State, 603 So.2d 843, 848 (Miss. 1992).
We hold that Blue has failed to prove that trial counsel was ineffective. The cases upon which Blue relies  Davis, Turner, Berry, Ladner, and Russell  are all cases in which the defendant was convicted as a habitual offender. In those cases, this Court held that the defense was entitled to an instruction that the defendant's habitual offender status made the defendant ineligible for parole. The allowance of this evidence in habitual offender capital murder cases is founded upon the theory that the Eighth and Fourteenth Amendments require that the sentencer not be precluded from considering, as mitigating factors, aspects of a defendant's character or record proffered as a basis for a sentence less than death. Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978); accord, McCleskey v. Kemp, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); Davis, 512 So.2d at 1293.
The Mississippi Legislature has mandated that a habitual offender sentenced to life imprisonment will never be eligible for parole, probation, or a reduced sentence. The statute applies to cases where a defendant has been convicted of felony crimes twice previously for which the sentence was one year or more in prison, and where one of the crimes involved violence. Miss. Code Ann. § 99-19-83 (1972). Thus, a defendant sentenced to life under § 99-19-83 must serve the remainder of his natural life in prison. At the sentencing phase in capital murder cases, a jury is entitled to "know by instruction whether the defendant is eligible for parole," as this information is non-speculative and provides them with relevant information to determine the defendant's fate. Turner, 573 So.2d at 675.
This Court's holding in Turner that a jury is entitled to know whether a defendant will be eligible for parole in the sentencing phase of trial is not the same as holding that *1196 a jury is entitled to know when a defendant will be eligible for parole if he receives a sentence other than life without parole. Blue seems to confuse the two in his argument. Evidence pertaining to when a defendant will be released on parole is merely speculative and should not be admitted for consideration in a sentencing hearing. "[E]vidence which is `totally speculative' should be withheld from a jury deliberating the fate of a convicted defendant." Id. at 674-75.
We hold that the case sub judice is controlled by [Walter] Williams v. State, 445 So.2d 798 (Miss. 1984), in which the defendant convicted of capital murder was not a habitual offender. In Williams, this Court reasoned that as parole is not automatic, "[a]llowing argument or testimony regarding the possibility of the defendant some day being paroled is in effect inviting the jury to speculate how ten years in the future [or thirty-years as the case may be in the present case] the parole board may exercise its legislatively granted discretionary authority." 445 So.2d at 813. See also [Jessie Derrell] Williams v. State, 544 So.2d 782, 798 (Miss. 1987). Because such discussion of parole is merely speculative, it would "introduce into the sentencing proceedings an `arbitrary factor' proscribed by § 99-19-105(3)(a)." Williams, 445 So.2d at 813. See also Williams, 544 So.2d at 799.[1] In fact, in Mackbee, 575 So.2d at 40, this Court clearly held that the one exception to the rule forbidding jury consideration of parole issues is when a defendant is sentenced as a habitual offender under § 99-19-83. This Court reasoned that this is so because such defendants are not eligible for parole, and thus, their fate under a life imprisonment sentence is non-speculative.
This Court continues our recognition of the reasoning announced by the principle established in [Walter] Williams, and restated in [Jessie Derrell] Williams and Mackbee. We hold that the jury was not entitled to be informed when Blue would be eligible for parole, thus, defense counsel's performance was not deficient under Strickland when he failed to request an instruction to that effect. There is no merit to this issue.

II. WHETHER DAVID BLUE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS OF LAW AND A FUNDAMENTALLY FAIR TRIAL WHEN HIS ATTORNEY REPEATEDLY CONCEDED HIS GUILT IN CLOSING ARGUMENT AT THE GUILT PHASE.
Blue's argument here focuses on the following statements that his defense counsel made to the jury during closing arguments:
Officer Sanford, Chief of Detectives of Police in Greenwood, Mississippi, what did he say concerning that point? It was his opinion that there were other people involved in this crime, and yet he (Indicating) is the only one sitting there. ...
Now, I tell you what is not in doubt. There's no doubt that this woman suffered a horrible death; no doubt about it; I suppose as bad as it could get; and there's no doubt that she did, because everybody has testified about that. But what the Defense has tried to prove to you is that this is not the only man. There are other people. And if we're not in this courtroom to do justice, what are we here fore? Justice, in my mind, is not justice unless it is complete justice. Someone and somebody is walking out on the streets in this town, free, and Mary Turntine is in her grave, and they should be sitting right there at that counsel table, and they're not. And if you think Mary Turntine's death is horrible, I think that's horrible. This boy is shouldering all the blame, and it's not all his.

My sense of fair play is violated ... The State has only focused on one suspect, David Blue, and have missed the opportunity for complete justice, and that's my reasonable doubt. Thank you. (emphasis added).
Blue's counsel further argued that Redman, and not Blue, was the one who kept *1197 going back to the table where Turntine was sitting and where her purse was in full view. Redman was also the one seen with the wooden bat, argued counsel, and when asked to take it to the station, took a metal bat instead. Counsel also pointed out that there was testimony to the effect that Turntine had hair clutched in her hands that neither belong to her nor Blue as his hair was too short to even take samples for evidence.
Blue contends that defense counsel repeatedly conceded Blue's guilt during the guilt phase of trial when he argued that Blue was not the only man involved in the crime, thereby inferring that Blue did play some part in the murder. As a result of these concessions, Blue asserts that he received ineffective assistance of counsel. Blue argues that this Court has repeatedly condemned defense counsel arguments which amount to the functional equivalent of a guilty plea. Blue relies on Wiley v. State, 517 So.2d 1373, 1382 (Miss. 1987) (permissible to concede guilt and argue that defendant is guilty of a lesser charge as "such candor in the guilt phase may help defendant in the sentencing phase"); accord, Faraga v. State, 514 So.2d 295, 307-308 (Miss. 1987) (permissible to concede that defendant is guilty of lesser charge where evidence of guilt is overwhelming); Woodward v. State, 635 So.2d 805 (Miss. 1993).
Blue also cites in support of his position, United States v. Swanson, 943 F.2d 1070 (9th Cir.1991) (defense counsel's concession during closing argument that no reasonable doubt existed regarding the only factual issues in dispute, that the defendant robbed a bank, was ineffective assistance as a defendant has a due process right to have his guilt proved beyond a reasonable doubt.). Blue cites Wiley v. Sowders, 647 F.2d 642, 644 (6th Cir.1981) (counsel guilty of ineffective assistance where he stated that client was "guilty as charged" in closing argument) and State v. Harbison, 315 N.C. 175, 337 S.E.2d 504 (1985) (counsel was ineffective where he conceded client's guilt during closing argument arguing that his client should not be found innocent, but should be found guilty of manslaughter).
Unlike Wiley, Faraga, and Woodward, Blue argues that defense counsel's admission of his guilt was not reasonable trial strategy. Unlike those cases, Blue contends in his case that counsel did not strategically argue that he was guilty of a lesser charge, but simply argued that other people guilty of the crime were not being charged. Blue further contends that counsel's statements justify a presumption that he was prejudiced, thereby obviating the need to prove prejudice. Swanson, 943 F.2d at 1073; Harbison, 337 S.E.2d at 506-07. Nonetheless, Blue argues that he was prejudiced by counsel's statements as counsel abandoned several obvious defenses  counsel failed to develop a strategy and develop a jury instruction on simple murder; counsel failed to request a jury instruction on manslaughter which Blue alleges he was entitled to as a matter of right; counsel ignored the defense that Redman and Lonzo Terry, rather than Blue, committed the murder; and Blue's confession is not consistent with forensic evidence. Blue argues that forensic evidence evinces that no seminal fluid was found in Turntine's anus, Turntine was found clutching hair which belonged neither to her nor Blue, and the semen found in Turntine's vagina could not be traced to Blue.
The State argued that defense counsel's statements at trial did not constitute ineffective assistance, as they may have been trial strategy. By arguing that three people were present and only one stood trial, the State contends that defense counsel attempted to place reasonable doubt in jurors minds regarding the identity of the murderer. By pointing out that Redman kept visiting the table at the club where Turntine's purse was in full view, that Redman was seen with the bat, and that the strands of hair found in Turntine's hair belonged to someone other than Blue, the State contends that defense counsel identified testimony that was inconsistent with only blaming Blue for the murder. By making these arguments, contends the State, defense counsel successfully emphasized evidence which pointed to someone other than Blue. The State further argued that counsel's "complete justice" argument was based on the fact that although Lonzo and Redman were arrested, they were not *1198 charged with the murder. The State argued that Blue's counsel pointed out that the police and prosecutor were trying to do justice, but the result was incomplete justice as they ignored evidence which pointed away from Blue. The State contends that such "incomplete justice" could place reasonable doubt in jurors minds. Because jurors were reminded of the State's burden of proving Blue's guilt beyond a reasonable doubt, the State argues that defense counsel was not ineffective.
Similar to Woodward, the State argues that prejudice as required by Strickland cannot be found in the present case as Blue's multiple confessions, the bloody clothes, the location of the purse, and the description of the body evince that Blue was "hopelessly guilty." The State further argues that Blue is not entitled to a presumption of prejudice. Unlike Swanson, where counsel conceded the only factual issues in dispute, the State asserts that defense counsel in the present case did not make any such concessions. Not once, argues the State, did counsel tell the jury that Blue was guilty, and not once did counsel concede that the State had met its burden of proof.
This Court has held that no attorney should concede his client's guilt during oral argument where the client has pled not guilty to the crime charged. Faraga, 514 So.2d at 308; Wiley, 517 So.2d at 1382. However, this Court has also held that concessions of guilt are strategically reasonable where the evidence evincing guilt is overwhelming and defense counsel attempts to argue that the defendant is guilty of a lesser charge. Faraga, 514 So.2d at 308; Wiley, 517 So.2d at 1382. Defense counsel in the present case did not explicitly state that Blue murdered Turntine. At most, it may only be inferred from counsel's statement.
It is certainly plausible and reasonable that defense counsel was strategically arguing that other people may have been responsible for Turntine's murder rather than Blue so as to place reasonable doubt in jurors' minds. This was one of a very few options for a defense available to Blue's counsel, who did about as well as might be expected considering the mountain of evidence against Blue.
It has been held that prejudice is presumed where defense counsel concedes his client's guilt. In Swanson, the court held that where defense counsel argued that no reasonable doubt existed concerning the defendant's guilt, the court found that prejudice was presumed, reasoning that:
The adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." Anders v. California, 386 U.S. 738, 743, 87 S.Ct. 1396, 1399, 18 L.Ed.2d 493 (1967). The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted  even if defense counsel may have made demonstrable errors  the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated. [U.S. v.] Cronic, 466 U.S. [648] at 657-57, 104 S.Ct. [2039] at 2045-46 [80 L.Ed.2d 657 (1984)]. (footnotes omitted).
Swanson, 943 F.2d at 1072-73.
Citing language that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," the Swanson court reasoned that counsel's concession lessened the government's burden of proving guilt and caused a breakdown in the adversarial system such that the defendant should not be required to show prejudice. 943 F.2d at 1073, citing U.S. v. Cronic, 466 U.S. at 659-60, 104 S.Ct. at 2047; See also State v. Harbison, 315 N.C. 175, 337 S.E.2d 504 (1985). Thus, if defense counsel's representation is found to be deficient, this Court may find that prejudice is presumed, pursuant to Swanson.
This Court holds that defense counsel's representation was not deficient and that prejudice is not presumed. Therefore, Blue has the burden of proving that there is *1199 a reasonable probability that the outcome of the case would have been different but for counsel's statements. Nicolaou v. State, 612 So.2d at 1086; Ahmad v. State, 603 So.2d at 848.
Evidence weighing in favor of Blue's innocence includes the following facts: Redman was seen with the wooden bat; Redman was seen at the club around Turntine's table; semen was found in Turntine's vagina which did not match Blue's blood type; no semen was found in Turntine's anus although Blue confessed that he had sex with her in that position; and hair was found in Turntine's hand that was never identified as coming from Blue.
However, the following evidence overwhelmingly evinces Blue's guilt: Blue gave a detailed confession to the police accurately describing Turntine's injuries, the location of the body, and where her purse could be found; while in jail, Blue admitted that he killed Turntine during a conversation he had with another inmate who happened to be Turntine's nephew; Turntine was hit with a blunt object; an individual wearing the same color clothing that Blue was wearing on the night of the murder was seen in the neighborhood where the murder occurred; Blue was seen in bloody clothing, carrying a bloody wooden bat, and in possession of a gun the night of the murder; and Blue has type A blood and Turntine has type O blood  which was found on Blue's shirt and socks. We hold that as there was substantial evidence evincing Blue's guilt, it cannot be said that there was a reasonable probability that the result of the trial would have been different but for counsel's statements. Blue fails to meet the requirements of Strickland. Blue is not entitled to a presumption of prejudice. Because this Court does not presume prejudice, Blue's assignment of error fails. Blue's counsel did not explicitly concede guilt. Defense counsel was merely utilizing the trial strategy of creating a reasonable doubt that Blue did not commit the crime charged as it was obviously done by others. There is no merit to this issue.

III. WHETHER DAVID BLUE'S DEATH SENTENCE MUST BE REVERSED BECAUSE OF HIS ATTORNEY'S INEFFECTIVE ASSISTANCE IN ARGUMENT AT THE PENALTY PHASE.
Blue's counsel argued against the death penalty and claimed that the events that led to Blue being tried for murder stemmed from his birth. Based upon testimony presented at trial primarily by Dr. MacVaugh, counsel argued that Blue lived in a house with twenty-two other people where he slept on the floor. Blue's family was poor, he didn't have a father figure because his father was never around, and Blue's mother gave him no supervision or moral guidance. Counsel argued that because Blue did not receive any love and care, he was incapable of loving, caring and respecting others and never really had a chance in society.
Blue argues that defense counsel was ineffective during the penalty phase when he told the jury "If you want to kill him, kill him." Blue contends that counsel's statement seems unlikely to produce favorable results and constituted unreasonable trial strategy. Citing Swanson, 943 F.2d at 1070, Blue argues that counsel's statements constituted ineffective assistance because his due process rights to an adversarial trial were violated.
In order to be successful on his ineffective assistance claim, Blue must overcome the presumption that defense counsel's statements were within the realm of reasonable trial tactics. Stringer, 454 So.2d at 477. This Court has held that attorneys are to be given considerable latitude in making arguments. Johnson v. State, 477 So.2d 196, 209 (Miss. 1985) ("the state and defense should be given wide latitude in their arguments to a jury... . Courts should be very careful in limiting the free play of ideas, imagery and the personalities of counsel in their argument to a jury.") The Court has further held that counsel's statements must be taken in context when determining whether counsel was ineffective. Woodward v. State, 635 So.2d 805, 808 (Miss. 1993).
We find that Blue's defense counsel was merely attempting to persuade jurors to compare their lives with Blue's allegedly underprivileged, unguided, and unloved life. According to defense counsel, these deficiencies *1200 in Blue's life eventually led him to commit murder. When counsel made the statement "If you want to kill him, kill him... . [i]f you want to sentence him to death, sentence him to death," counsel was strategically attempting to argue that such a penalty would not punish or teach a lesson to the people who are primarily responsible for Blue's shortcomings, to wit: his mother, his grandmother, and society. As Blue's counsel's statements strategically emphasized the futility of imposing a death sentence in light of Blue's childhood, it cannot successfully be argued that counsel's performance was deficient under the first prong of Strickland.
Blue similarly failed to prove counsel's performance deficient when counsel stated, "If you want to sentence him to death, don't let me persuade you not to. If you don't want to sentence him to death, don't let the District Attorney persuade you to. You do it, and I will be satisfied." Counsel's statements can be classified as reasonable trial strategy as counsel encouraged jurors to make up their own minds when determining penalties without being influenced by either party.
Blue failed to prove that counsel's statements were not reasonable trial tactics; his ineffective assistance claim fails. We find no merit to this issue.

IV. WHETHER THE FAILURE OF TRIAL COUNSEL TO REQUEST AN IDENTICAL OFFENSE INSTRUCTION WAS INEFFECTIVE ASSISTANCE OF COUNSEL, DEPRIVING DAVID BLUE OF RIGHTS SECURED HIM BY THE STATE AND FEDERAL CONSTITUTIONS.
Blue relied on Butler v. State, 608 So.2d 314, 320 (Miss. 1992) as his authority that he was entitled to an instruction informing the jury of its right to convict him of manslaughter rather than capital murder.
In Butler, the defendant was convicted of capital murder for killing her nine month old son who died of severe internal injuries. There were two identical statutes under which the defendant could be convicted, one authorizing a conviction for capital murder, and the other authorizing a conviction for manslaughter with a maximum penalty of 20 years imprisonment. The defendant requested, and was refused, an instruction under the manslaughter statute. This Court held that the jury should have been instructed that they could convict under the manslaughter statute reasoning:
[W]e do not think any prosecuting attorney should have it in his power to prosecute a defendant for capital murder when the same offense could be prosecuted under a statute with a less severe penalty and also prevent a jury from considering whether she should be found guilty only under the statute carrying the lesser punishment.
Id. at 320.
Blue contends that his right to have the jury instructed on his theory of defense is fundamental. O'Bryant v. State, 530 So.2d 129, 133 (Miss. 1988) (an accused has an absolute fundamental right to have every lawful defense he asserts, even though based upon meager evidence and highly unlikely, to be submitted to the jury under proper instruction); Young v. State, 451 So.2d 208, 211 (Miss. 1984) (where defendant had an alibi and presented testimony in support of this defense, defendant was entitled to a jury instruction focusing upon such a theory).
Blue further contends that he was prejudiced by the failure to instruct on manslaughter. Blue argues that the record evinces that the jury was inclined to opt for a manslaughter conviction as shown by the fact that the jury was unable to agree on whether he should be sentenced to life on the armed robbery charge. He contends that the jury found him guilty of armed robbery but was unable to agree on the sentence. As further evidence that he should have been granted a manslaughter instruction, Blue argues that the jury asked what life imprisonment meant in the penalty phase of trial.
Blue's assertion of error is without merit. Blue's reliance on Butler for the proposition that he was entitled to a manslaughter instruction is misplaced. Butler does not stand for the proposition that a defendant is per se entitled to a manslaughter instruction in a murder case, as Blue *1201 essentially asserts. This Court did, however, hold that a defendant was entitled to a manslaughter instruction where the same offense was proscribed by two different criminal statutes  one of which authorized a capital murder conviction, and the other of which authorized a manslaughter conviction. As the dilemma presented in Butler is not present in the instant case, Butler is inapplicable.
Furthermore, because Blue killed Turntine during the commission of a rape and armed robbery, he was not entitled to a manslaughter instruction. Miss. Code Ann. § 97-3-27 (1972) provides:
The killing of a human being without malice, by the act, procurement, or culpable negligence of another, while such other is engaged in the perpetration of a felony, except rape, burglary, arson, or robbery, or while such other is attempting to commit any felony besides such as are above enumerated and excepted, shall be manslaughter.
(emphasis added). Blue was charged with felonies excepted by the manslaughter statute, therefore he was not entitled to a manslaughter instruction. Moreover, while it is true that an accused has the right to have his defenses presented to the jury in a jury instruction, the defense must be supported by the evidence, however meager that evidence may be. O'Bryant, 530 So.2d at 133; Young, 451 So.2d at 211. There was absolutely no evidence presented at trial that Blue did not intend to kill Turntine or that the murder was committed in the heat of passion as is required for a manslaughter defense. Miss. Code Ann. § 97-3-25, § 97-3-47 (1972). To the contrary, evidence was presented as to the brutal and intentional nature of the crime.
We hold that because there was absolutely no evidence presented supporting the granting of a manslaughter instruction, Blue was not entitled to such an instruction under § 97-3-27. The statute clearly states that the killing must be "without malice." No reasonable juror could possibly conclude the absence of malice in the case sub judice. Counsel's performance was neither deficient nor ineffective under Strickland when he failed to request such an instruction. There is no merit to this issue.

V. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUPPRESS DAVID BLUE'S STATEMENTS AS THEY WERE THE PRODUCT OF AN ILLEGAL ARREST.
On March 22, 1993, Blue's counsel filed a motion to suppress Blue's statements alleging that they were the product of an illegal arrest. Counsel claimed that Blue was arrested without a warrant or sufficient probable cause.
During the hearing on the motion to suppress, Sergeant Sanford testified that he went to the crime scene approximately between 6:30 a.m. and 7:00 a.m. Saturday morning and saw Turntine's body. While on the scene, he stated that Captain Willie Gilbert received a statement from neighbors (the Pittmans) indicating that they saw a black male wearing a red shirt and dark pants carrying something. Sanford testified that Captain Gilbert relayed him this information while he was at the scene.
Sanford testified that he took a statement from Rosemary Robinson who had heard about the murder and came into the station at approximately 1:30 p.m. Sanford further testified that Robinson said she saw Blue early Saturday morning wearing an orange shirt and black shorts. Robinson told Sanford that Blue was carrying a wooden baseball bat and had blood all over him. Robinson said Blue washed the blood off of him in the sink, and began telling them that he beat up two "dudes" and took their pistol.
Sanford testified that the police had not received any reports of any other assaults, and if Blue was as bloody as Robinson related, they should have received a report. The local hospital makes it a habit of calling the police station if anyone comes in that has been assaulted, according to Sanford.
Sanford further testified that he advised all officers to be on the look out for Blue, and to bring him in for questioning if they found him. Sanford testified that he had probable cause to have Blue arrested based upon Robinson's statement and what he learned at the *1202 crime scene, and not the information from Gilbert. Approximately thirty minutes after Sanford's conversation with Robinson, Blue was brought in, read his rights, and informed that he was needed for questioning regarding a murder investigation. Although Blue was placed in a juvenile cell until he was questioned at 5:30 p.m. and was not free to leave, Sanford testified that Blue was not under arrest at the time.
Although there was testimony that Blue was initially picked up only for questioning and was not under arrest, the trial court found that Blue was under arrest when he was placed in the youth court holding facility without the ability to walk off. The court found that there was no doubt that the police were investigating a bloody murder that took place in the early morning hours, that they were looking for a bloody defendant, and that they had received information implicating Blue. The court, however, never explicitly ruled that the police had probable cause to arrest Blue. Nonetheless, the court stated that "there was certainly sufficient cause to bring Mr. Blue into the station for questioning." The court further ruled that Blue's statements made during questioning were admissible. What else could the trial court have possibly been referring to other than that there was sufficient "probable cause"? "In absence of anything in the record appearing to the contrary, the Supreme Court presumes that the trial court acted properly." Moawad v. State, 531 So.2d 632, 635 (Miss. 1988).
We have even held that even assuming that the arrest was improper for lack of reasonable cause, it does not follow that confessionary statements made therein are inadmissible. Wagner v. State, 624 So.2d 60, 67 (Miss. 1993). Nevertheless, in Wagner, we found that probable cause did exist where defendant was arrested pursuant to an officer testifying that defendant had possession of truck on night that victim, defendant's half-sister, came up missing, and that there was blood in the cab, hair on the undercarriage, and a T-shirt in back of truck with dark stains on it similar to what officers knew victim to have been wearing on night of murder. Thus, this Court found no flagrant misconduct in arresting defendant at wake of victim, in light of the evidence implicating him. Id. at 66. Likewise, in this case, there were enough facts linking Blue to the murder of Turntine, so as to constitute probable cause for arrest. Therefore, Blue's statements are admissible.
Blue contends that the police lacked probable cause to arrest him because the only information linking him to the crime was Rosemary Robinson's statement which he argues was insufficient to support a finding of probable cause. Blue relies on Carey v. State, 695 S.W.2d 306 (Tex. App. 1985) as authority. In Carey, the Texas court held that the fact that the boyfriend who found girlfriend who had been stabbed in neck, took the girlfriend to the hospital, was nervous and sweating more than police thought right, and had more blood on his clothing than others amounted to no more than a general suspicion of his connection to the crime.
In the present case, "[a]n arrest within the meaning of the criminal law is the taking into custody of another person by an officer or a private person for the purpose of holding him to answer an alleged or suspected crime." Smith v. State, 229 So.2d 551, 556 (Miss. 1969). "One who voluntarily accompanies an officer to a place where he may be interviewed is not under arrest." Id. As the trial court found, Blue was arrested when he was placed in a juvenile holding facility and denied his freedom to walk away. An arrest is valid if the arresting officer has "`probable cause' to believe that a felony has been committed, and probable cause to believe the suspect to be arrested committed the felony." Abram v. State, 606 So.2d 1015, 1026 (Miss. 1992) (probable cause found where two police informants informed the police that they overheard from others that the defendant committed the subject murder). "`Probable cause' means less than evidence which would justify condemnation, but more than bare suspicion." Henry v. State, 486 So.2d 1209, 1212 (Miss. 1986). Furthermore,
[T]he existence of "probable cause" or "reasonable grounds" justifying an arrest without a warrant is determined by factual and practical considerations of everyday *1203 life on which reasonable and prudent men, not legal technicians act. The determination depends upon the particular evidence and circumstances of the individual case. The facts necessary to uphold an arrest without a warrant must be sufficiently strong to support the issuance of a warrant for arrest.
Abram, 606 So.2d at 1026.
We hold that the police had sufficient probable cause to arrest Blue. The following facts support the arrest: the police were investigating a bloody murder; Sanford's observation of Turntine's body revealed that she was hit with an object of some sort; neighbors in the vicinity where the crime occurred informed officer Gilbert that they saw a black male carrying something and wearing a red shirt and dark pants on the night in question; Gilbert related this information to officer Sanford; Rosemary Robinson informed Sanford that Blue was wearing a orange shirt and black shorts on the night of the murder, was covered in blood, and was carrying a baseball bat; although Blue stated that he got into a brawl with two guys, the police never received any reports to that effect.
While Sanford initially testified that he did not rely on the information given to him by Gilbert when deciding to have Blue picked up, he subsequently contradicted himself by stating that he did in fact rely on this information. Nevertheless, the trial judge had the authority to consider this conflicting evidence when determining the admissibility of Blue's confession. Ingram v. State, 146 Miss. 303, 111 So. 362 (1927). Adhering to Abram, we hold that the facts and circumstances of this case would lead a reasonable and prudent person to have substantially more than a bare suspicion that a crime had been committed and that Blue committed it. Thus, we find that Blue's claim that probable cause was lacking and his statements should have therefore been suppressed is without merit.

VI. WHETHER THE TRIAL COURT ERRED IN ADMITTING THE INVOLUNTARY STATEMENTS OF DAVID BLUE INTO EVIDENCE IN VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Blue's motion to suppress his statements alleged that as a result of his age and mental capacity, he was unable to give a knowing and intelligent waiver of his rights.[2] During the hearing on the motion, Officer Sanford testified that at approximately 5:30 p.m. on June 6, 1992, Blue was read his rights, and afterwards gave a statement that was video and audio taped. Blue was questioned again on June 7 at 7:30 p.m. and was again read his rights. Blue gave a second typed statement at that time, which was neither video nor audio taped. Sanford testified that Blue acknowledged that he understood his rights, and was not threatened or coerced in any manner to waive his rights. Sanford further stated that he could not tell that Blue was below average intelligence, and that Blue did not give him any indication that he did not understand what was occurring. In fact, while informing him of his rights, Blue stated that he understood them and was "used to it." Sanford further testified that he had advised Blue of his rights on at least five previous occasions since 1985 as the result of crimes he may have committed.
Detective Barr testified that during the June 6 interview, Blue understood his rights, understood what was going on around him, and was neither coerced nor influenced in any manner to give the statement. Barr testified that he thought Blue was of normal intelligence for his age, and that he had interviewed him on several occasions before regarding possible crimes.
Regarding Blue's ability to understand the events concerning his statements, Dr. MacVaugh testified that although Blue was mildly mentally retarded with an IQ of 67,[3] nevertheless *1204 Blue's disability did not mean that he was incapable of understanding anything in Dr. MacVaugh's opinion. Dr. MacVaugh's opined that Blue would not understand a waiver of his rights if it were presented to him on paper. However, he further opined that if the terms of the waiver were explained to him in more elementary terms, Blue would be able to comprehend the essence of them. It was also his opinion that the language in the written statement was more sophisticated and detailed than what he would expect from Blue, such as giving detailed address locations, and use of the word "bosom." Dr. MacVaugh viewed part of the video tape of Blue's confession and testified that Blue's speech was not slurred, Blue responded to officers as Blue had responded to Dr. MacVaugh, and the questioning appeared to be reasonably straightforward without a lot of pressure being exerted. Dr. MacVaugh did not see anything on the tape that would lead him to believe that Blue was being threatened. He further testified that Blue was familiar with the legal system, and that Blue knew that he was being charged with a serious crime for which he could get the death penalty.
The trial court found that because of the nature of the crime and because Blue had been certified to the circuit court on another crime, Miss. Code Ann. § 43-21-303(3) (1972) did not apply. Thus, Blue's age did not require that he have a parent present during interrogation. We agree. The court further found that there was no evidence in the record to evince that Blue was coerced, threatened, or enticed into giving his statement. Moreover, the court found that a mental weakness in and of itself did not invalidate Blue's confession. Based on the evidence, and Dr. MacVaugh's testimony in particular, the trial court found that Blue understood the content and substance of his Miranda[4] warnings and that his statements were intelligently and voluntarily made. Finally, the trial court found that the June 6 typed confession was not taken simultaneously with the actual interview, because reading the transcript, one would believe that Blue received no prompting at all. The tape, however, evinced that Blue received a great deal of prompting. The trial court thus held that the jury should hear the tape in lieu of the typed confession being allowed into evidence. A portion of the June 7 confession was read into evidence as it contained additional information.
Blue argues his confession was involuntary and coerced. This Court's review of whether Blue's confession was voluntary is limited. This Court has held that the circuit court sits as a fact finder when determining voluntariness of a confession, and the court's determination will not be reversed unless manifestly wrong. Porter v. State, 616 So.2d 899, 907 (Miss. 1993). The State has the burden of proving all facts prerequisite to the admissibility of a defendant's confession beyond a reasonable doubt. Id. at 908. Blue's reliance on Miller v. Fenton, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) for the assertion that this Court enjoys de novo review of the matter is misplaced as Miller dealt with federal review of state court determinations of voluntariness. The present case involves a state court determination of a lower court decision on the issue.
Blue's allegation that his age had some bearing on whether he had the ability to voluntarily waive his Miranda rights is without merit. It is presumed that Blue is arguing that because he was seventeen, he should have had a parent present during interrogations as required under the youth court provisions of § 43-21-303(3). However, the youth court has no jurisdiction over this case as Miss. Code Ann. § 43-21-151 (1972) clearly provides that:
The youth court shall have exclusive original jurisdiction in all proceedings concerning a delinquent child ... except where any act committed by a child, which if committed by an adult would be punishable under state or federal law by life imprisonment or death, in which, under such circumstances, the circuit court shall be the court of original jurisdiction. *1205 (emphasis supplied). We hold that Blue's case falls within the exception specified under the provision of § 43-21-151. The circuit court was clearly the court of "original jurisdiction" in Blue's case. Because the nature of this case was one in which the offender could receive life imprisonment or death and the circuit court had original jurisdiction, Blue's age had no special bearing on his ability to be questioned without a parent and voluntarily waive his rights.
Blue's statements were voluntary and admissible against him. Blue's mental condition did not in and of itself render his confession inadmissible. This Court has held that there is no per se rule that mental retardation renders a confession involuntary and inadmissible. Neal v. State, 451 So.2d 743, 756 (Miss. 1984). See Harvey v. State, 207 So.2d 108 (Miss. 1968) (confession by eighteen year old defendant with IQ of 60 and suffering from brain damage held inadmissible); Dover v. State, 227 So.2d 296 (Miss. 1969) (confession of forty-five year old defendant with IQ of 60 held inadmissible); Hancock v. State, 299 So.2d 188 (Miss. 1974) (confession held admissible after Miranda warnings were given where defendant had an IQ of 87 and was considered "dull normal"); Gator v. State, 402 So.2d 316 (Miss. 1981) (confession held admissible where defendant's IQ was placed at a range between 43 and 70).
In Neal, this Court held a defendant's confession admissible where he had a contested IQ between 54 and 60; there was testimony that he was capable of understanding and waiving his rights; there was credible testimony by detectives that he understood his rights and voluntarily confessed; and the defendant never requested the presence of an attorney. This Court held that the mental abilities of an accused are but one factor to consider among the totality of the circumstances of a confession and interrogation. Neal, 451 So.2d at 756. A trial judge must "determine whether the accused, prior to the confession, understood (a) the content and substance of the Miranda warnings and (b) the nature of the charges of which he was accused." Neal, 451 So.2d at 755.
In the case sub judice, there was evidence that Blue had been in trouble with the law on several prior occasions during which time he was given Miranda warnings. In fact, when Sanford attempted to inform him of his rights Blue stated that he understood his rights and "was used to it [the procedure]." In addition, officers Sanford and Barr testified that Blue understood his rights, was neither coerced nor threatened to give a confession, and appeared to understand what was going on. Moreover, Dr. MacVaugh reviewed the video tape of Blue's confession and opined that the questions asked of Blue were straightforward without the appearance of coercion. Dr. MacVaugh further opined that Blue responded to the officers in the same manner that he responded during the mental examination. Furthermore, although testimony evinces that Blue had been drinking prior to his arrest,[5] both Barr and Sanford testified that he did not appear intoxicated at the time of his arrest. In addition, Dr. MacVaugh did not recognize anything abnormal about the manner in which Blue answered questions and testified that Blue's speech was not slurred. The evidence overwhelmingly established that intoxication was not a factor when Blue gave his statements. This Court, as requested by Blue, has reviewed the video tape in question. We hold that because there is substantial evidence indicating that Blue understood his rights and voluntarily waived them, the trial judge's decision finding Blue's confession admissible was not in error. There is no merit to this issue.

VII. WHETHER MISSISSIPPI CODE ANNOTATED § 97-3-19(2)(e) VIOLATES THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, AND ARTICLE 3 §§ 14, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION, AS WELL AS MISSISSIPPI CASE LAW.
*1206 Blue contends that the Mississippi death sentencing scheme fails to provide a principled way to distinguish the few cases in which the death should be imposed from the many cases that it should not due to the statutory overlapping of §§ 97-3-19(2) and 97-3-27 of the Mississippi Code Annotated (1972). Blue argues that the jury, even had it been properly instructed, would have unfettered discretion to choose between two crimes, one of which being punishable by death. Therefore, Blue asserts, the statutory overlapping violates the Eighth Amendment of the federal constitution. Blue further contends that the rule of lenity dictates that where two penal statutes set forth identical elements of the offenses, the accused must be prosecuted under the statute imposing the lesser punishment. See Dunn v. United States, 442 U.S. 100, 112, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979) (the rule of lenity is not merely a convenient maxim of statutory construction; rather, it is rooted in fundamental principles of due process); Mullaney v. Wilbur, 421 U.S. 684, 703, 95 S.Ct. 1881, 1892, 44 L.Ed.2d 508 (1975) ("it is far worse to sentence one guilty only of manslaughter as a murderer than to sentence a murderer for the lesser crime of manslaughter"). Blue points out that this Court has declared its fidelity to the polestar of lenity in State v. Russell, 358 So.2d 409, 412 (Miss. 1978) ("penal statutes are interpreted strictly against the State and are construed liberally in favor of an accused").
This Court notes that defense counsel failed to raise this claim at trial. Blue's failure amounts to a procedural bar on appeal, which this Court now imposes without hesitation. Chase v. State, 645 So.2d 829, 835 (Miss. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 2279, 132 L.Ed.2d 282; Foster v. State, 639 So.2d 1263, 1270 (Miss. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1365, 131 L.Ed.2d 221 (1995); Cole v. State, 525 So.2d 365 (Miss. 1987), cert. denied, 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 348 (1988). Alternatively, procedural errors aside, considering this assignment on its merits, we reject it as being without merit.
Section 97-3-19(2)(e) of the Mississippi Code Annotated (1972) states, in pertinent part:
(1) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
.....
(e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or in any attempt to commit such felonies.
Section 97-3-27 of the Mississippi Code Annotated (1972) states:
The killing of a human being without malice, by the act, procurement, or culpable negligence of another, while such other is engaged in the perpetration of any felony, except rape, burglary, arson, or robbery, or while such other is attempting to commit any felony besides such as above enumerated and excepted, shall be manslaughter.
The maximum sentence for the latter statute is twenty years imprisonment. Miss. Code Ann. § 97-3-25. The United States Supreme Court's holding in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) would indicate that such statutory overlapping is unconstitutional because it allows the arbitrary imposition of death. In Furman, three men were convicted of either murder or rape and sentenced to die by a jury, respectively and individually. 408 U.S. at 239, 92 S.Ct. at 2727. On appeal, it was alleged that the imposition and carrying of the death penalty, in these cases, constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendment. The United States Supreme Court agreed. 408 U.S. at 240, 92 S.Ct. at 2727.
We find that Blue's argument that the statutory overlapping is unconstitutional fails for two reasons. First, it is well established that where there are two separate *1207 criminal statutes for the same offense, the State has a choice of deciding under which statute it will proceed, as long as the State clearly sets forth in the indictment under which statute it is proceeding. Butler v. State, 608 So.2d 314, 320 (Miss. 1992), citing Rowland v. State, 531 So.2d 627, 631-32 (Miss. 1988); Cumbest v. State, 456 So.2d 209, 223 (Miss. 1984). In the case sub judice, the indictment clearly states that Blue was charged with violating Miss. Code Ann. § 97-3-19(2)(e). Thus, pursuant to Cumbest, it is of little consequence that Blue could have been charged with a crime with a lesser penalty. Id. at 223. Second, the fact that the statutes overlap does not leave a jury with total unguided discretion to choose between two crimes even though one is punishable by death. In order to impose a death sentence in the first place, a jury must determine that the defendant either, actually killed, attempted to kill, intended that a killing take place or that lethal force would be employed. Miss. Code Ann. § 99-19-101. Upon making this determination, the jury must then identify and weigh the aggravating circumstances against the mitigating circumstances it has identified. Miss. Code Ann. § 99-19-101(2) and (3)(c). If the jury is unable to find an aggravating circumstance, or, in the event that an aggravating circumstance is found and the jury determines that it is outweighed by the mitigating circumstances, the death penalty is statutorily barred. We hold that Blue's argument that the statutory overlapping fosters arbitrariness is meritless because the jury must go through a two-step analysis before imposition of the death penalty.
This issue is procedurally barred, and alternatively, without merit.

VIII. WHETHER THE PROSECUTOR'S IMPROPER COMMENT ON MATTERS NOT PLACED IN EVIDENCE VIOLATED DAVID BLUE'S RIGHT TO A FUNDAMENTALLY FAIR TRIAL.

A. Reference to the exoneration of other defendants
Blue contends that the prosecutor improperly commented on facts not in evidence when he stated that Blue's accomplices were not being tried because they had been exonerated in a prior judicial hearing. Blue asserts that the transcript of the preliminary hearing was never admitted into evidence. Blue further argues that this statement was prejudicial as it implied that a judicial determination had been made that Blue was solely responsible for the crime and that he was not to be believed.
Blue's assignment of error is procedurally barred on appeal because a contemporaneous objection was not made to these comments at trial, and the comments were not offered as a ground for new trial. Foster v. State, 639 So.2d 1263, 1270 (Miss. 1994).
Alternatively, considering the issue on the merits, Blue's claim is without merit. A review of closing arguments reveals that defense counsel emphasized that Redman and Lonzo were involved in the crime against Turntine. Defense counsel even made reference to the judicial action, or lack thereof, taken against Redman and Lonzo.
The prosecutor's subsequent argument that Redman and Lonzo were not being tried because Judge Wheatly determined in a judicial hearing that the State "lacked enough proof to try them," was only a response to defense counsel's statements. We hold that defense counsel opened the door to the presentation of this information and Blue will not now be allowed to claim the prosecutor's statements as error.
This issue is procedurally barred and, alternatively, without merit.

B. Personal Opinion comments
During the guilt phase of trial, the State argued:
This Defendant, Ladies and Gentlemen, washed his hands and washed his body several times that night, to wash the blood off. And he can wash from now to forever, but the blood of Mary Turntine will always be on his hands. He can never wash it off. Ladies and Gentlemen, this Defendant is guilty of these three crimes. The State has brought you ample proof beyond a reasonable doubt as to all three crimes. And I ask you, Ladies and Gentlemen, not only to find him guilty, but to sentence him *1208 to life on the armed robbery charge. I told you, and the Judge has told you, that at this stage of the trial we're not concerned with the death penalty. But Ladies and Gentlemen, this man deserves everything that he can get for the most brutal murder. He can't wash the blood off. He's guilty, Ladies and Gentlemen, and I ask you to go back to your jury room and take a vote. He is guilty of all three counts, and I ask you to sentence him to life.
During the sentencing phase, the State argued:
Ladies and Gentlemen, this Defendant could have gotten a life sentence if he had taken her purse. He could have done that by holding a bat over her head and saying, I'm going to hit you with this unless you give me your purse; and got a sentence of life. This murder deserves so much more. There is no other appropriate punishment, Ladies and Gentlemen; not for somebody like David Blue. I can look at him and point at him, and I don't have any problem telling you that he's not just a number. He is a criminal defendant, Ladies and Gentlemen, who committed one of the most brutal murders in Greenwood's history, and he deserves to be sentenced to death for it. And I don't apologize for standing up here and telling you that, and I don't have any qualms about it, because it is an appropriate punishment ...
Blue contends that the prosecutor improperly expressed her personal opinion regarding the merits of the case in the guilt and sentencing phases of trial. Blue argues that it was inappropriate for counsel to state that he was guilty of the crimes charged, and that the death penalty was an appropriate punishment. As authority for his argument, Blue relies on United States v. Morris, 568 F.2d 396, 401 (5th Cir.1978) ("an attorney's statements that indicate his opinion or knowledge of the case ... are permissible if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence"). Blue further argues that the prosecutor's comments require reversal of his conviction. Griffin v. State, 557 So.2d 542, 553 (Miss. 1990) (reversible error found where prosecutor argues facts which lack evidentiary support and engages in other prosecutorial misconduct).
Once more the record reveals that Blue neither raised an objection to the prosecutor's comments at trial, nor in his motion for new trial. Blue's claim is now waived on appeal and the procedural is bar applied. Foster v. State, 639 So.2d 1263, 1270 (Miss. 1994).
Alternatively, we consider the issue on the merits. This Court has held that it is error to argue statements of fact which are not in evidence or not necessarily inferable to it, and which are prejudicial to the defense. Chase v. State, 645 So.2d 829, 855 (Miss. 1994); Nixon v. State, 533 So.2d 1078, 1100 (Miss. 1987). We find that the prosecutor's comments regarding Blue's guilt and the punishment due him were not personal opinion comments. The prosecutor never said that she believed Blue was guilty or that she believed that Blue deserved the death penalty. Reviewing the statements in context, the prosecutor simply argued that the evidence adduced at trial proved guilt beyond a reasonable doubt and supported a penalty of death.
We hold that because the prosecutors's comments were properly based on the evidence, Blue's assignment of error is without merit. Peyton v. State, 286 So.2d 817, 819 (Miss. 1973) (although it would have been more prudent for prosecutor to draw inferences without stating his personal opinion in the statement "we believe that he is guilty," court held that it was not error to allow such statements where there was ample evidence from which the prosecutor could draw such conclusion; the very purpose of an advocate is to help the jury draw conclusions from the evidence and make suggestions as to a proper conclusion); Long v. State, 163 Miss. 535, 141 So. 591 (1932).
This assignment is rejected as being both procedurally barred and alternatively, without merit.

IX. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF THE VIDEO TAPE OF THE CRIME SCENE *1209 INCLUDING THE VICTIM'S BODY.
The defense made a motion in limine to restrict the quantum of video and photographic evidence to be used by the State at trial to the extent that the evidence would inflame the passion of jurors. The court ruled that it would make it's decision of admissibility when the evidence was introduced at trial. During the testimony of county coroner James Hankins, the State, over objection, introduced a photograph of Turntine's body for Hankins to identify. Thereafter, the prosecution, over objection, offered a video tape of the crime scene into evidence during Sergeant Sanford's testimony. After viewing the video and finding that its probative value outweighed its prejudicial effect, the court allowed the jury to view the portion of the video depicting the crime scene itself and Turntine's body at the scene with the volume turned down. Sanford, who took photographs and taped the crime scene, identified the following depictions on the video: where the struggle started as indicated by blood and hair on loose gravel; Turntine's shoes on the street; Turntine's body covered by a sheet; blood on the sidewalk creating a path to where she was found; the position of Turntine's body and clothing when she was found; a shot of Turntine's head split open at the scene; blood splattered on the wall of 104 Jackson Street; blood splattered on the bottom of a steel pole; and a wood box located near Turntine's body.
The prosecution thereafter successfully sought to introduce photographs of the crime scene into evidence. The prosecution argued that the photos were necessary to aide the testimony of future witnesses who were expected to testify regarding Turntine's wounds. Replying to the defense's subsequent argument that the prosecution had a choice of which to use and chose the video, the prosecution stated "well I can't stop the video. I want to have these witnesses look at this, and we can't get a clear picture on the video."
Dr. Hayne, a forensic pathologist who performed the autopsy on Turntine, subsequently testified at trial regarding Turntine's injuries. The following photographs were identified and admitted during his testimony: blood splatters on the side of the house evincing that some type of blunt force was used; Turntine's elbow; Turntine's left hand depicting bruises; her left buttock showing abrasions; her right hand depicting bruises; injuries to her head and neck; and cracks in her skull with the scalp lifted.
During the penalty phase of trial, the following photographs were identified and admitted during Sanford's testimony and subsequently used during Dr. Hayne's testimony regarding the heinous, atrocious, and cruel nature of the crime: photograph of a puddle of blood at the base of a pole indicating that Turntine's head had rested there at some point and that she was injured prior to being in that position; two photographs of Turntine in a fetal position depicting her buttock and grass stains evincing that her body had changed positions; blood splatters on the wall of 104 Jackson Street and on a nearby wood box indicating that the assailant was on the right side of Turntine when she was hit in a face down position; a small amount of blood next to Turntine's covered body indicating that she was dragged on the ground; a blood stain next to Turntine's body laying in a fetal position indicating that she was hit again face down and fell to the side.
Blue contends that the court erred when it admitted the video of the "blood soaked" crime scene and Turntine's body into evidence as it was used only for its dramatic effect, and was used in addition to seventeen still photographs of the crime scene. As authority for his contention, Blue cites Holland v. State, 587 So.2d 848, 865 (Miss. 1991) (video of exhumation and burial cite was held to have no probative value where photos of the grave site were admitted and revealed the same evidence; however, the video was not prejudicial in light of its content and other overwhelming evidence in the case); McNeal v. State, 551 So.2d 151 (Miss. 1989) (photographs of victim's nude and partially decomposed maggot-infested body held improperly admitted as State could have shown wounds without full-color, closeup views); Welch v. State, 566 So.2d 680 (Miss. 1990) (photographs of dissected cadaver held improperly admitted as prejudicial and inflammatory). *1210 Arguing that the video was simply a ploy to arouse the passion and prejudice of the jury, Blue contends that his conviction must be reversed.
Blue's challenge to the video's introduction on the basis that it was cumulative and inflammatory is without merit. This Court has held:
[T]he admissibility of photographs rests within the sound discretion of the trial judge, whose decision will be upheld absent abuse of that discretion ... Yet, photographs which are gruesome or inflammatory and lack an evidentiary purpose are always inadmissible as evidence. Cabello v. State, 471 So.2d 332, 341 (Miss. 1985); Billiot v. State, 454 So.2d 445, 449-60 (Miss. 1984).
McNeal v. State, 551 So.2d 151, 159 (Miss. 1989), quoting McFee v. State, 511 So.2d 130, 135 (Miss. 1987). Keeping in mind the considerations delineated in McFee when determining admissibility and the provisions of Rule 403 of the Mississippi Rules of Evidence,[6] a court must also consider (1) whether the proof is absolute or in doubt as to identity of the guilty party, and (2) whether the photographs are necessary evidence or simply a ploy on the part of the prosecutor to arouse the passion and prejudice of the jury. McNeal, 551 So.2d at 159. The same standards applicable to determining the admissibility of photographs are applicable to video tapes. See Holland v. State, 587 So.2d 848, 864 (Miss. 1991).
We hold that the video tape of the crime scene was not cumulative so as to be inadmissible under Rule 403 because the only visual evidence admitted prior to the video was a photograph of Turntine's face for the purpose of identification. Furthermore, under the first prong of the McFee analysis, the identity of Turntine's murderer was still in question prior to the video's admission. As the video depicted the position of Turntine's body at the crime scene, it corroborated aspects of Blue's confession and aided the prosecution in identifying him as the guilty party. Moreover, the video was necessary in helping the jury to visualize the bloody crime scene when hearing testimony regarding the injuries Turntine received, how and where she received them, and the force necessary to inflict her injuries. Additionally, to eliminate any prejudicial comments being heard, the jury was required to view the tape with the volume turned down to prevent the actual conversation from being heard. As the video was probative and not unduly prejudicial, admission of the video into evidence was not manifestly erroneous.
Although photographs of the crime scene were subsequently admitted which revealed essentially the same evidence, these photographs were clearer than the video. Additionally, the photographs were clearly used by Dr. Hayne in proving cause of death and aided the jury in determining the heinous, atrocious and cruel nature of the crime. Thus, the photographs were probative.
This issue is rejected for lack of merit.

X. WHETHER THE PROSECUTOR USED PEREMPTORY CHALLENGES IN A RACIALLY DISCRIMINATORY WAY IN VIOLATION OF THE FEDERAL AND STATE CONSTITUTIONS AND STATE LAW.
Exercising its peremptory instructions, the State struck Cinderella Morris and Ann Barnwell from the jury panel. During voir dire, Morris informed the court that her sister was accused of but not charged with, killing her brother in 1977. She stated that she had no ill feelings toward law enforcement or prosecutors. The following colloquy ensued between Morris and the prosecution:
Q. Well, does it cause you any problems that your brother was killed and nobody was charged with that, or does it cause you  do you feel good that your sister was not charged with the crime?
A. Well, I feel good that she wasn't charged with it. My brother is dead but there is nothing that I can do *1211 about it, I have no hard feelings about her, because I think the Lord will take care of her.
During examination by the defense, Morris indicated that she could be fair and would neither lean in favor of the defense nor the State because of her brother's death. Using its peremptory challenge against Morris, the State alleged "[h]er sister murdered her brother, and she seemed to think that that was just fine, and her attitude about that bothers me." The defense objected to the challenge as not being race-neutral and argued that Morris thought that whatever the Court decided to do about it must have been correct. The court accepted the challenge as race-neutral.
Blue contends that the exercise of peremptory challenges must be race-neutral and "related to the particular case to be tried." Chisolm v. State, 529 So.2d 635, 638 (Miss. 1988). Race-neutral reasons are also required for the striking of white venire members, contends Blue. Griffin v. State, 610 So.2d 354, 356 (Miss. 1992). Blue contends that the reasons given for the peremptory strike against Morris was neither race-neutral nor related to the case as Morris indicated that she had overcome her grief, placed her faith in God, and indicated that she could be fair in the instant case.
In the instant case, under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in order to prove that the State used its peremptory challenges in an unconstitutional manner, the defendant must show (1) that Blue is a member of a cognizable racial group; (2) that the prosecutor exercised peremptory challenges to excuse a venire person of the defendant's race; and (3) that there is an inference that the venire persons were excluded on account of their race. 476 U.S. at 96, 106 S.Ct. at 1722-23; Mack v. State, 650 So.2d 1289, 1296 (Miss. 1994). The burden thereafter shifts to the State to come forward with a race-neutral explanation for challenging the jurors. Mack at 1296. The prosecutor's explanation need not rise to the level of a challenge for cause. Lockett v. State, 517 So.2d 1346, 1352 (Miss. 1987), citing Batson, 476 U.S. at 97, 106 S.Ct. at 1723.
The record in the case sub judice offers no facts to enable this Court to determine if there is a prima facie showing of discrimination as the record neither indicates the racial composition of the jury nor does it indicate Morris' race so as to determine whether she is of the same race as the defendant. Nonetheless, Blue alleges that the prosecutor's challenge against Morris was pretextual because the reason given for the strike was not related to the case. One factor in determining pretext is the relationship of the reason cited to the actual facts of the case. The reasons given must be "related to the particular case to be tried." Chisolm, 529 So.2d at 638, quoting Batson, 476 U.S. at 98, 106 S.Ct. at 1724. The State's reason for striking Morris was sufficiently related to the case so as not to be deemed pre-textual. Although Morris indicated that she could be fair, her statement, could also be viewed as placing the punishment of a wrongdoer in the hands of the Lord. Morris' statement that the Lord will take care of her sister, who allegedly killed her brother, could indicate that Morris would be inclined to vote not guilty even if the evidence proved Blue guilty. The statement could also indicate that she would vote for a sentence less than death in belief that the Lord would render Blue's ultimate punishment. We hold that because the reasons given by the State were race-neutral and were related to the case, Blue's assignment of error against Morris must fail.
Blue also challenges the strike of Ann Barnwell. Following the defense's eighth peremptory strike, the court asked the defense if it was trying to get in Ann Barnwell as a juror. The defense replied "No, I'm not. I love her to death. Death, that was the wrong choice of words." When Barnwell came up for selection, the State exercised its peremptory challenge without objection alleging "the Defense said he just loves her to death, and I think that relationship is just a little too close."
Blue contends that defense counsel's "off handed attempt at humor" was the sole basis for striking Barnwell from the jury. Because there was no other reason offered for *1212 the strike, Blue contends that the reason given was pretextual.
Once again, this Court notes that Blue waived his right to contest the striking of Barnwell as defense counsel offered no rebuttal to the prosecutor's challenge of Barnwell, and thus, failed to timely object to her dismissal so as to preserve the issue for review. Thomas v. State, 517 So.2d 1285, 1287-1288 (Miss. 1987). Blue is procedurally barred on this issue. Procedural bar aside, considering the issue on its merits, a review of the record gives no indication of Barnwell's race so as to aide in a Batson analysis. However, because Barnwell was struck based upon her nebulous relationship with defense counsel, it can be reasoned that the challenge was sufficiently race-neutral. The trial court thus did not err by granting the peremptory challenge. There is no merit to this issue.
This assignment is rejected as being procedurally barred in part and alternatively without merit.

XI. WHETHER THE TRIAL COURT'S REFUSAL TO ALLOW DAVID BLUE TO INTRODUCE RELEVANT MITIGATING EVIDENCE VIOLATED HIS RIGHTS SECURED BY THE STATE AND FEDERAL CONSTITUTIONS.
The prosecution objected to Dr. MacVaugh's speculative testimony about Blue's future behavior. Blue contends that the trial court clearly erred in sustaining the prosecutor's objection. Blue argues that the prosecutor repeatedly asked Dr. MacVaugh, on cross-examination, to speculate about Blue's future behavior but refused to allow the defense to do the same. Thus, Blue asserts, the trial court's ruling deprived him of an opportunity to present mitigating evidence. Blue argues that because the mitigating evidence was excluded, the Eighth Amendment of the United States Constitution and Article 3 § 28 of the Mississippi Constitution were violated. Therefore, Blue asserts, his death sentence should be vacated.
The State contends that the trial court correctly sustained the objection because redirect examination is limited to matters brought out on cross-examination. Miss. U.Crim.R.Cir.C.P. 5.08. Furthermore, the State argues, the scope and extent of redirect examination is within the discretion of the court and will not be disturbed unless there is a clear abuse of discretion. Evans v. State, 499 So.2d 781, 782 (Miss. 1986), citing Wharton's Criminal Evidence, § 451 (13 ed. 1972); Weeks v. State, 493 So.2d 1280, 1285 (Miss. 1986); West v. State, 463 So.2d 1048, 1055 (Miss. 1985); Cole v. Tullos, 228 Miss. 815, 90 So.2d 32 (1956); Tucker v. Tucker, 74 Miss. 93, 19 So. 955 (1896). The State asserts that the trial court did not abuse its discretion in sustaining the objections to Blue attempting to introduce new matters on redirect examination. The State further contends that matters Blue wished to bring out on redirect could have been brought out on direct examination, but that he failed to do so. The State also contends that the trial court's ruling did not deny any relevant mitigating evidence because Blue was allowed to question the witness "about the personality disorder burning out at age forty-five, which is the true rebuttal for questions asked on cross examination by the prosecution.
Blue's argument is not without a basis. The scope of redirect examination, while largely within the discretion of the trial court, is limited to matters brought out during cross-examination. Evans v. State, 499 So.2d 781 (Miss. 1986). Miss.Unif.Crim. R.Cir.Ct.P. 5.08. Furthermore, this Court will not disturb a trial court's ruling on matters pertaining to redirect unless there has been a clear abuse of discretion. Evans, 499 So.2d at 782.
The prosecutor in the case at bar, asked Dr. MacVaugh on cross-examination, questions pertaining to Blue's ability to distinguish right and wrong, capability of "recovery" and whether or not Blue could learn from punishment by incarceration. The record does not reflect, in full, what the defense counsel intended to ask the doctor on redirect. All attempted questions by Blue's counsel were interrupted prior to completion by the prosecutor's objections.
Blue's problem on this issue is compounded in that this Court is left with mere speculation as to the intentions of defense *1213 counsel. We decline to speculate. Blue's counsel wholly failed to proffer his completed questions, nor the answers from his witness. This Court will not now assume what the witness would have testified to in an attempt to establish Blue's "recovery" ability. This was a mere speculative opinion anyway which Blue could have easily brought out on direct examination of Dr. MacVaugh. He failed to do so and now argues that it was in rebuttal of the State's questions. We note that Blue was allowed to question Dr. MacVaugh on redirect about the personality disorder burning out at about age forty-five. Such questioning would have been true rebuttal of the prosecution's questions asked on cross-examination. We hold that there was no relevant mitigating evidence denied to Blue by the trial court's ruling.
There is no merit to this issue.

XII. WHETHER THE PROSECUTION IMPROPERLY ARGUED THAT THE JURY SHOULD CONSIDER THE NONTESTIFYING DEFENDANT'S DEMEANOR IN SENTENCING HIM.
During closing argument, the State made the following statement without objection:
Counsel says our church teaches us to turn the other cheek. Yes, Mary had a right to forgive this Defendant, but you don't have the right to turn the other cheek. She was the only person who can forgive what he did to her. You know, What disturbs me more than anything, Ladies and Gentlemen, is the beating down of this victim. He didn't have to do that. He had control of her. She was physically helpless. She didn't have the ability to fight him off. She was beaten down, blood slung everywhere, because he had beaten her all the way across the street, up in between the houses. And then he says, I had fun with her. I had fun with her. This Defendant, Ladies and Gentlemen, has sat through this entire trial smiling. This is all a joke to him, that you might even consider sentencing him to death.
The State is correct in its assertion that Blue failed to object. Because of the failure to object, we hold that this assignment of error is procedurally barred from consideration on appeal. Foster v. State, 639 So.2d 1263 (Miss. 1994); cert. denied, ___ U.S. ___, 115 S.Ct. 1365, 131 L.Ed.2d 221 (1995); Cole v. State, 525 So.2d 365, 369 (Miss. 1987), cert. denied, 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 348 (1988); Irving v. State, 498 So.2d 305 (Miss. 1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 826 (1987); Johnson v. State, 477 So.2d 196 (Miss. 1985), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986); In re Hill, 460 So.2d 792 (Miss. 1984); Hill v. State, 432 So.2d 427 (Miss. 1983), cert. denied, 464 U.S. 977, 104 S.Ct. 414, 78 L.Ed.2d 352 (1983).
However, Blue is also correct in his assertion that this Court has routinely in past cases overlooked the procedural bar where the error is a comment on the defendant's failure to testify. See Griffin v. State, 557 So.2d 542, 552 (Miss. 1990); Livingston v. State, 525 So.2d 1300, 1306-07 (Miss. 1988); Monroe v. State, 515 So.2d 860, 864 (Miss. 1987); Griffin v. State, 504 So.2d 186, 193 (Miss. 1987); Stringer v. State, 500 So.2d 928, 940 (Miss. 1986); West v. State, 485 So.2d 681, 688 (Miss. 1985). We decline to continue such a procedure of routinely overlooking the application of the procedural bar where appropriate. The issue is procedurally barred.
Procedural errors aside, alternatively, we address the merits. Blue contends that the aforementioned comment on his demeanor violated the Fifth and Fourteenth Amendments to the United States Constitution as well as Article 3, Sections 14 and 26 of the Mississippi Constitution. See Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Blue argues that comments on the demeanor of a non-testifying defendant invite the jury to convict the defendant on matters not in evidence. Therefore, Blue asserts that where information against the defendant is derived from sources outside the witness stand, the defendant's right to confront the witnesses against him is lost and the evidence goes untested in the crucible of cross-examination.
In support of this contention, Blue directs this Court to its decision in Reed v. State, 197 So.2d 811 (Miss. 1967). In that case, the prosecutor made the following argument to *1214 the jury: "Look at the defendant. I have observed him for the past two days and he sat and showed no emotion whatever during the trial of this cause." Id. at 814. This Court has held that the prosecutions comment on the non-testifying defendant's demeanor required a reversal. Id. at 815-816. Other state cases which Blue points to as controlling are Knox v. State, 502 So.2d 672, 675 (Miss. 1987) (reaffirming Reed); West v. State, 485 So.2d 681, 690 n. 5 (Miss. 1985); Craft v. State, 226 Miss. 426, 84 So.2d 531 (1956); Gurley v. State, 101 Miss. 190, 57 So. 565 (1912); Jones v. State, 569 So.2d 1234 (Fla. 1990); Robinson v. State, 520 So.2d 1, 5-6 (Fla. 1988).
Blue also relies on the following federal cases: United States v. Schuler, 813 F.2d 978, 982 (9th Cir.1987) (error for the prosecution to refer in closing argument to non-testifying defendant's courtroom behavior; even where it is doubtful that it directed the jury's attention to the fact that the defendant did not testify, "it will tend to eviscerate the right to remain silent by forcing the defendant to take the stand in reaction or in contemplation of the prosecutor's comments"); United States v. Wright, 489 F.2d 1181, 1186 (D.C. Cir.1973) (error for the prosecution to argue that the jury can consider the defendant's courtroom behavior as evidence of guilt); United States v. Carroll, 678 F.2d 1208, 1209 (4th Cir.1982) (error for the prosecution to comment on the defendant's consulting with his attorney about photographs of the scene; prosecutor argued this showed that defendant familiar with the scene of the crime); United States v. Pearson, 746 F.2d 787 (11th Cir.1984) (prosecutor's argument that defendant's off-the-witness-stand courtroom behavior indicated he was nervous was error).
The State distinguishes the cases cited by Blue from the facts of the instant case. For example, the State urges that West and Reed are inapplicable because the Court did not address the assignment of error regarding comments on demeanor in the sentencing phase. In Craft, the State asserts, the prosecutor did not comment on the defendant's actions during the trial, rather the prosecutor commented on the defendant's conduct and character in relation to the crime (i.e., attempted to introduce inadmissible character evidence through his argument). In Gurley, the State argues, the prosecutor directly referred to the defendant's failure to testify, whereas in the instant case there was no direct reference.
The State also contends that if there was an error, it was cured through the jury instructions, in which the jury was instructed that the remarks of counsel were not to be considered as evidence in the trial. Therefore, the State argues that the jury was well aware that arguments of counsel did not constitute evidence and that silence of the defendant could not be considered prejudicial to this case.
Prosecutors are afforded the right to argue anything in the State's closing argument that was presented as evidence. Hanner v. State, 465 So.2d 306, 311 (Miss. 1985) citing Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). However, arguing statements of fact which are not in evidence or necessarily inferable from it and which are prejudicial to the defendant is error. Tubb v. State, 217 Miss. 741, 64 So.2d 911 (Miss. 1953). Thus, it is a general rule that prosecuting attorneys should refrain from commenting upon the appearance of a defendant when he has not been introduced as a witness. Reed v. State, 197 So.2d 811, 815 (Miss. 1967). Moreover, prosecuting attorneys should refrain from doing or saying anything that would tend to cause the jury to disfavor the defendant due to matters other than evidence relative to the crime. Sumrall v. State, 257 So.2d 853, 854 (Miss. 1972).
In the instant case, the prosecutor's comment clearly speaks to a non-testifying Blue's demeanor and appearance. Consequently, the comment may possibly have highlighted Blue's failure to testify, which is plainly prohibited. Griffin v. State, 557 So.2d 542 (Miss. 1990); Jimpson v. State, 532 So.2d 985 (Miss. 1988); Livingston v. State, 525 So.2d 1300 (Miss. 1988); Monroe v. State, 515 So.2d 860 (Miss. 1987); Lee v. State, 435 So.2d 674 (Miss. 1983). See also Miss. Code Ann. § 13-1-9. Therefore, on its face, the comment appears to be improper and the *1215 prosecutor should not have made the remark. Reed, 197 So.2d at 815. However, this is not fatal to the State's case.
The determinative question of this issue which this Court must decide is whether this comment was so prejudicial that it tended to cause the jury to sentence Blue to death rather than a life sentence. Arguably, if the prosecutor's comment planted a seed suggesting the worthlessness of Blue's life because he "sat through this entire trial smiling," there can be little doubt that the comment was extremely prejudicial. On the other hand, the effect of this comment, assuming there was an effect, was corrected by the jury instructions. The pertinent jury instructions, which were given during the guilt phase, stated:
INSTRUCTION CR-1A
Arguments, statements and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence. If any statement or remark has no basis in the evidence, then you should disregard that argument, statement or remark.
Other instructions given, pertinent to this issue were as follows:
INSTRUCTION D-3
The Court instructs the jury that you have no right under the law to draw any unfavorable inference against the Defendant because he did not testify in this cause and that his failure to testify should not be considered by you as evidence.
INSTRUCTION C-1
The Court instructs the jury that you have no right under law to draw any unfavorable inference against the defendant because he did not testify in this phase of the trial.
Instruction CR-1A clearly prohibits the jury from considering comments made by counsel as evidence. It is generally presumed that jurors will obey and apply the instructions of the court. Johnson v. Fargo, 604 So.2d 306, 311 (Miss. 1992); Singing River Mall Co. v. Mark Fields, Inc., 599 So.2d 938, 943 (Miss. 1992); Parker v. Jones County Community Hosp., 549 So.2d 443, 445-46 (Miss. 1989). We hold that this jury instruction effectively eradicated any effect the prosecution's comment on Blue's demeanor may have had on the jury's decision. Other instructions given clearly prohibit the jury from making unfavorable inferences about Blue because he did not testify. Therefore, even if the prosecutor's comment highlighted Blue's failure to testify, the jury instructions, when considered as a whole, directed the jury to ignore the fact that Blue did not testify.
This issue is procedurally barred, and alternatively, without merit.

XIII. WHETHER THE SUBMISSION OF THE "SEXUAL BATTERY" AGGRAVATING CIRCUMSTANCE VIOLATED STATE LAW, THE STATE CONSTITUTIONAL PROHIBITION AGAINST DOUBLE JEOPARDY, AND THE FEDERAL CONSTITUTIONAL PROHIBITIONS AGAINST DOUBLE JEOPARDY AND CRUEL AND UNUSUAL PUNISHMENT.
Blue was charged and convicted of sexual battery. Thereafter, over defense objection in the penalty phase, the jury was instructed to consider as an aggravating circumstance that "the capital offense was committed while the Defendant was engaged in the commission of sexual battery."
Blue's argument that the submission of this aggravating circumstance of error is twofold: (1) it does not narrow the class of death-eligible defendant in a rational manner; the instruction violates the Eighth Amendment because it does not narrow the class of death-eligible defendants, and (2) by punishing the defendant twice for conduct punishable by count II of the indictment, it offends the state and federal prohibitions against double jeopardy.
The State contends that this assignment of error is procedurally barred due to Blue's failure to make a specific contemporaneous objection to the instruction at trial. Foster v. State, 639 So.2d at 1270-71; Chase, 645 So.2d at 835. (This Court has repeatedly held that *1216 if no contemporaneous objection is made, the error, if any, is waived. This rule's applicability is not diminished in a capital case); Cole v. State, 525 So.2d 365, 369 (Miss. 1987), cert. denied, 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 348 (1988); Irving v. State, 498 So.2d 305 (Miss. 1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 826 (1987); Johnson v. State, 477 So.2d 196 (Miss. 1985), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986); In re Hill, So.2d 460 So.2d 792 (Miss. 1984); Hill v. State, 432 So.2d 427 (Miss. 1983), cert. denied, 464 U.S. 977, 104 S.Ct. 414, 78 L.Ed.2d 352 (1983).
Blue contends that this claim cannot be procedurally barred because of two reasons. First, this Court has refused to apply this bar to aggravating circumstances. See, e.g., Clemons v. State, 535 So.2d 1354 (Miss. 1988) (failure to object and raise on direct appeal no bar to review improperly submitted aggravating circumstance); Pinkney v. State, 602 So.2d 1177 (Miss. 1992); Clemons v. State, 593 So.2d 1004 (Miss. 1992); see also Smith v. State, 477 So.2d 191 (Miss. 1985) (this Court looks beyond procedural bar where error is of constitutional dimension); accord Smith v. Black, 970 F.2d 1383, 1387 (5th Cir.1992). Second, this Court has a statutory obligation, pursuant to Miss. Code Ann. 1972 § 99-19-105(3)(a)(b) (Supp. 1993), to consider possible sentencing errors that are not raised by the defendant or not objected to at trial. See Beam v. Paskett, 3 F.3d 1301 (9th Cir.1993) cert. denied, Arave v. Beam, ___ U.S. ___, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994). We find this issue to be procedurally barred.
Alternatively, procedural errors aside, we now address the issue on the merits.

A. The Failure of the "Sexual Battery" Aggravator to Genuinely Narrow the Class of Death-Eligible Capital Defendants Violates the Eighth Amendment.
Blue contends that the "sexual battery" aggravating circumstance used in the instruction is neither "determinate" nor "genuinely narrow" as required under Arave v. Creech, 507 U.S. 463, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993). In Creech, the United States Supreme Court stated
Our precedents make clear that a State's capital sentencing scheme must ... genuinely narrow the class of defendants eligible for the death penalty. When the purpose of a statutory aggravating circumstance is to enable the sentencer to distinguish those who deserve capital punishment from those who do not, the circumstance must provide a principled basis for doing so. If the sentencer fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty, the circumstance is constitutionally infirm.

507 U.S. at 474, 113 S.Ct. at 1542 (quotations and citations omitted; emphasis added).
Blue argues that the "sexual battery" aggravating circumstance fails the Creech test because it applies to every defendant convicted of § 97-3-19(2)(e) Mississippi Code Annotated 1972 capital murder, i.e., lacks determinativeness. Blue further argues that the "sexual battery" aggravating circumstance fails the Creech test because unintentional sexual battery murder, alone, is not a crime for which the death penalty is a proportionate punishment because under Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), it does not genuinely narrow the class of defendants for the death penalty. For these reasons, Blue asserts, the "sexual battery" aggravating circumstance violates the Eighth Amendment and should not have been submitted to his jury.
The State argues that this Court has rejected this argument in Ladner v. State, 584 So.2d 743 (Miss. 1991) in which it relied on the United States Supreme Court decision, Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). In Ladner, the court stated:
In Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), the petitioner sought to have his death sentence vacated on the ground that the sole aggravating circumstance found by the jury at the sentencing phase was identical to an element of the capital crime for which he was convicted. Id. at 241, 108 S.Ct. at 552-553, 98 L.Ed.2d at 579. The United States Supreme Court held that when constitutionality *1217 required narrowing of the class of persons eligible for the death penalty is accomplished by the legislative definition of capital offenses in the guilt phase (as done in Louisiana and in Mississippi), the jury's further narrowing in the sentencing phase is not constitutionally required.
584 So.2d at 763. Blue argues that the State's reliance on this case is misplaced.
In Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), the United States Supreme Court held that the Lowenfield holding was geared toward Louisiana death penalty schemes and the death penalty schemes of states like Louisiana.[7] It was determined that Mississippi was not one of these states. Louisiana is a non-weighing state and Mississippi is a weighing state. The Court pointed out that this Court (Mississippi Supreme Court) has "at all times viewed its sentencing scheme as one in which aggravating factors are critical in the jury's determination whether to impose the death penalty." Id. at 234-35, 112 S.Ct. at 1139. The Supreme Court stated:
Even were we free to ignore the Mississippi Supreme Court's understanding of the way its own law works, we would reject the suggestion that Lowenfield could form the basis for an argument that Godfrey[8] does not apply to Mississippi. Although our precedents do not require the use of aggravating factors, they have not permitted a State in which aggravating factors are decisive to use factors of vague or imprecise content. A vague aggravating factor employed for the purpose of determining whether a defendant is eligible for death penalty fails to channel the sentencer's discretion. A vague aggravating factor used in the weighing process is in a sense worse, for it creates the risk that the jury will treat the defendant as more deserving of the death penalty than he otherwise may be by relying upon the existence of an illusory circumstance.
Stringer, 503 U.S. at 235, 112 S.Ct. at 1139 (1992). Stringer, of course, concerned the heinous, atrocious and cruel instruction.
However, in the case sub judice, it is noteworthy that Blue committed two separate acts of sexual battery. Count I of the indictment charged capital murder while engaged in the commission of the crime of sexual battery involving the penetration of the victim's anus with a bat, which, incidentally, was the underlying felony for the capital murder charge. Count II of the indictment charged Blue with engaging in sexual penetration of Turntine by inserting his penis into the anal opening of Turntine. One constituted the underlying felony to the capital murder and the other was the basis of the separate sexual battery conviction. We hold that the latter act of sexual battery aggravates the crime and narrows the class substantially. In simple terms, all felony murders involving sexual battery, by definition, do not encompass multiple acts of sexual battery.
There is no merit to this issue.

*1218 B. The "Sexual Battery" Aggravating Circumstance was Barred by Double Jeopardy and by the Clear Terms of the Statute.
Blue argues that the State by using the Count II indictment of sexual battery as an aggravating circumstance is punishing Blue for the crime of sexual battery twice, which is contrary to the elemental principles of our constitutional law. Blue asserts that this Court has previously addressed this question in Meeks v. State, 604 So.2d 748 (Miss. 1992).
In Meeks, this Court addressed the question of whether the defendant could be punished for capital murder involving kidnaping by sentence of life imprisonment and thereafter by a consecutive thirty year sentence for kidnaping. The Court concluded that the kidnaping conviction was error because it put the defendant in double jeopardy and that there was no hint from the record that the defendant committed more than one act of kidnapping. Id. at 749-50. In reaching this conclusion this Court applied the Blockburger rule found in Blockburger v. United States, 284 U.S. 299, 303, 52 S.Ct. 180, 181-82, 76 L.Ed. 306 (1932), and held that "the courts may not impose for a de jure offense more than lawfully the prescribed punishment." Meeks, 604 So.2d at 751. Also, the rule provides that "where no further evidence is needed to establish the lesser offense, once the prosecution has proved the greater offense, punishment for the lesser is barred." Id.
In the instant case, the indictment charges, inter alia, that Blue
COUNT I: unlawfully, wilfully, feloniously and of his malice aforethought did, then and there, kill and murder one Mary Turntine, a human being, at time when David Blue was engaged in the commission of the crime of sexual battery by engaging in sexual penetration of Mary Turntine by inserting a bat into the anal opening of Mary Turntine against her will and without her consent or at a time when she was a physically helpless person as defined in §§ 97-3-97(a) and (d) of the Mississippi Code Annotated of 1972 as amended all in violation of § 97-3-19(2)(e) of the Mississippi Code of 1972 as amended; and
COUNT II: did unlawfully, wilfully and feloniously engage in sexual penetration of Mary Turntine by inserting his, David Blue's, penis into the anal opening of Mary Turntine against her will and without her consent or at a time when she was a physically helpless person as defined in § 97-3-97(d) of the Mississippi Code Annotated of 1972 as amended.
Blue argues that if the "sexual battery" supporting the aggravating circumstance was that of Count II of the indictment, the double jeopardy clause has been violated as a matter of state and federal constitutional law.
Blue's argument fails for two reasons. First, unlike Meeks, the Count II sexual battery charge is a separate and distinct act. In Count I, the sexual battery involved the act of penetrating the victim's anus with a bat. The Count II sexual battery charge involved the act of penetrating the victim's anus with Blue's penis. Second, there is no proof that the sexual battery used as an aggravating circumstance was that found in Count II. Even if the Count II act of sexual battery was used as an aggravating circumstance, as the State asserts, aggravating circumstances carry no penalty. The only purpose aggravating circumstances serve is to narrow the class of individuals most worthy of receiving the death penalty and to furnish guidance to the jury in determining whether to impose a sentence of death in a capital murder case. The class has been narrowed sufficiently in Blue's case.
This assignment of error is procedurally barred and alternatively without merit.

XIV. WHETHER SENTENCING INSTRUCTION S-1 IMPERMISSIBLY "PLACED A THUMB ON DEATH'S SIDE OF THE SCALE" IN VIOLATION OF THE EIGHTH AMENDMENT AND STATE LAW BY ALLOWING THE JURY TO WEIGH BOTH THE "PRIOR CONVICTION" AND "UNDER IMPRISONMENT" AGGRAVATING CIRCUMSTANCES.
In sentencing instruction S-1, the State requested, and was granted, the five aggravating circumstances for the jury's consideration. *1219 At issue are the following two aggravators:
1. The capital offense was committed by a person under sentence of imprisonment.
2. The Defendant was previously convicted of a felony involving the use of threat of violence to the person.
The State argued to the jury that the aggravating circumstances were two independent reasons for imposition of the death penalty.
Blue contends that the "double weighing" of the "prior conviction" and "under sentence of imprisonment" aggravating factors violates both Mississippi law and the Federal Constitution. Blue argues that since this Court has previously held that "robbery" and "pecuniary gain" should not be given as separate and independent aggravators, when they comprise one, "prior conviction" and "under imprisonment" should also not be used as separate and independent aggravators for the same reason. See Willie v. State, 585 So.2d 660, 680-81 (Miss. 1991) ("Not only should the two aggravators not be given as separate and independent aggravators when they essentially comprise one, they may not be given. When life is at stake, a jury cannot be allowed the opportunity to doubly weigh the commission of the underlying felony and the motive behind underlying felony as separate aggravators"); Ladner v. State, 584 So.2d 743, 762-63 (Miss. 1991). Therefore, Blue contends the sentencing phase of this case must be reversed because this Court has no statutory authority to reweigh remaining aggravating factors when one or more is found to be invalid, Clemons v. State, 593 So.2d 1004 (Miss. 1992), or to engage in harmless error analysis in assessing aggravating circumstance claims, Wilcher v. State, 635 So.2d 789 (Miss. 1993). See also Sochor v. Florida, 504 U.S. 527, 539-41, 112 S.Ct. 2114, 2123, 119 L.Ed.2d 326 (1992) (Eighth Amendment error exists when the sentencer weighs an "invalid" aggravating circumstance in reaching the ultimate decision to impose a death sentence. Employing an invalid aggravating factor in the weighing process creates the possibility of randomness by placing a thumb on death's side of the scale, thus creating the risk of treating the defendant as more deserving of the death penalty).
Again, we note that this assignment of error was waived due to Blue's failure to raise an objection on this ground at trial. Foster, 639 So.2d at 1270; Chase, 645 So.2d at 835. Blue is procedurally barred on this issue due to his failure to object.
Alternatively considering this issue on the merits, Willie is distinguishable from the instant case. The State claims that the Willie decision rested on the Court's reasoning that robbery by its definition is committed for pecuniary gain. The reasoning of the Willie Court rested on the fact that "the two aggravating circumstances rested on the same element of pecuniary gain." Thus, that Court reasoned that robbery by its very definition is committed for pecuniary gain.
In the instant case, the State correctly argues, the aggravated assault conviction was used for two separate and distinct purposes. In fact, the State asserts, the conviction was not an element in both aggravating circumstances. The State contends that, first, the conviction was used to prove that Blue had been convicted of a crime of violence in support of the aggravating circumstance found in Miss. Code Ann. § 99-19-101(5)(b). Second, the State contends, the conviction[9] was used to prove that Blue was under a sentence of imprisonment at the time he committed the present crime.
In rebuttal, Blue contends that this assignment of error cannot be procedurally barred for the same reasons as argued under Issue XIII. Furthermore, Blue argues that since this case was tried more than two years after Willie, the trial counsel's failure to object to the double use of the same facts in aggravation constituted ineffective assistance of counsel.
Blue's argument is totally without merit. We agree that robbery by definition *1220 is committed for pecuniary gain and therefore "robbery" and "pecuniary gain" cannot be used as two separate aggravating circumstances.
The case sub judice however is an entirely different situation than Willie. It does not follow that having a prior conviction of a felony involving the use of threat or violence by definition means that one is under a sentence of imprisonment. An individual can have a prior conviction involving the use of threat of violence and not be under a sentence of imprisonment. Likewise, an individual can also be under a sentence of imprisonment, and not have a prior conviction involving the use of threat or violence. Thus, these two factors are separate and distinct. In the instant case, it just so happens that Blue's prior aggravated assault conviction was the same conviction for which he was still under sentence of imprisonment.
This assignment of error is procedurally barred, and alternatively, without merit.

XV. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE TO PRESENT THE UNDERLYING FACTS OF A PRIOR FELONY CONVICTION WHERE SUCH EVIDENCE WAS IRRELEVANT AND WITHOUT PROBATIVE VALUE.
The State, in an attempt to prove that Blue was convicted of a felony involving the use of threat or violence as an aggravating circumstance was allowed to introduce, over defense objection, the indictment issued against Blue charging him with aggravated assault, to which Blue had pled guilty. The State argued that the indictment was the best evidence that Blue caused bodily injury with a pistol. Blue argued that the judgment of conviction was the best evidence and that aggravated assault by definition involves violence. The trial court ruled that the indictment would be admissible.
After the indictment was entered as an exhibit, the State, without objection, argued for and was granted instruction S-7 which provided "[t]he Court instructs the Jury that the crime of aggravated assault is a felony involving the use or threat of violence to a person within the definition of these instructions."
Blue contends that the trial court erroneously allowed the State to introduce the indictment charging him with aggravated assault. Blue argues that the indictment set forth underlying facts that were highly prejudicial and lacked probative value. Furthermore, Blue argues, the introduction of the indictment was contrary to the best evidence rule. The best evidence was the judgment of conviction. Blue argues that as a result of the introduction of this irrelevant and prejudicial evidence, his rights under Article 3, §§ 14 and 28 of the Mississippi Constitution of 1890 and the U.S. Constitution were violated; thus, his death sentence should be vacated.
The State contends that Blue's prior conviction of aggravated assault and the sentence he received were properly admitted into evidence because they were used to support the two aggravating circumstances. First, the State argues it had to prove that the prior conviction of aggravated assault was a crime of violence to prove the aggravating circumstance found in Miss. Code Ann. § 99-19-101(5)(b) (Supp. 1994). Second, the State argues, it had to adduce proof that Blue was under a sentence of imprisonment at the time of the commission of this crime to support the aggravating circumstance under subsection (b) of the aforementioned code provision. The State asserts that in order to do this, it was necessary to introduce the testimony of the Leflore Circuit Clerk, a copy of the indictment, and a copy of the judgment of conviction. For these reasons, the State submits, this evidence was relevant in this case.
This Court has held that "[t]he best evidence of a previous conviction is the judgment of conviction." Stringer v. State, 500 So.2d 928, 942 (Miss. 1986), quoting McGowan v. State, 269 So.2d 645, 649 (Miss. 1972). However, "if the actual judgment of conviction is not introduced, it may only be proved by documents accorded equivalent evidentiary weight by statute." Monroe v. State, 515 So.2d 860, 867 (Miss. 1987), quoting DeBussi v. State, 453 So.2d 1030, 1031 (Miss. 1984). Section 13-1-77 of the Mississippi *1221 Code Annotated (1972) provides that a certified copy from the custodial state officer "shall be received in evidence in all cases." For example, certified copies of the judgment are accorded equivalent evidentiary weight as the actual judgment. Crawley v. State, 423 So.2d 128 (Miss. 1982); Jackson v. State, 418 So.2d 827 (Miss. 1982); Baker v. State, 394 So.2d 1376 (Miss. 1981). Lovelace v. State, 410 So.2d 876, 879 (Miss. 1982) (abstracts of court records certified by justice court judge sufficient); See Vincent v. State, 200 Miss. 423, 27 So.2d 556 (1946) (certified copies of docket entries of conviction sufficient). In the instant case, the State used the indictment charging Blue with aggravated assault to prove that Blue was convicted of a felony involving the use of threat or violence. Thus, the use of the indictment meets the standards of the best evidence rule provided that it was properly certified. Therefore, the remaining question which this Court must now consider is whether the indictment was properly certified?
To "certify" is "[to] authenticate or vouch for a thing in writing" or "[t]o attest as being true as represented." Monroe, 515 So.2d at 868, quoting Blacks's Law Dictionary, 207 (5th ed. 1979). Thus, the determination of this question is governed by Rules 901(b)(7), 902(1) and (4) of the Mississippi Rules of Evidence. Monroe, 515 So.2d at 868. Rule 901(b)(7) provides with respect to admissibility of public records or reports that
Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or purported public record, report statement, or data compilation, in any form, is from the public office where items of this nature are kept.
Rule 902(1) provides, with respect to self-authentication that
A document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.
Rule 902(7) provides, also with respect to self authentication that
Inscriptions, signs, tags or labels purporting to have been affixed in the course of business and indicating ownership, control or origin.
In the case sub judice, there was no indication from the record that a sign, tag or label was affixed to the indictment in the course of business indicating ownership, control or origin. See M.R.E. 902(7). Furthermore, there was no indication that the indictment bore a seal purporting to be that of Leflore County where Blue was indicted. See M.R.E. 902(1). However, the indictment does bear a signature of the Leflore County Clerk, Trey Evans and the date upon which the indictment was filed. Additionally, Evans testified at trial that the indictment came from the Leflore County Circuit Court file. It is generally held that no particular words are required for proper certification. 30 Am.Jur.2d Evidence § 1013 (1967). The indictment, in this particular case bears Evans' signature and he attested to its origins. Thus, this Court holds that the document was properly certified. The indictment was a proper substitute for the actual judgment of conviction. We note that when the State attempted to introduce a copy of the judgment of conviction Blue objected to its introduction because it contained Blue's imposed sentence.
Next, in addressing whether the evidence was relevant we look to M.R.E. 401, which states:
"Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
We find that the evidence offered by the State was indeed relevant in Blue's case. The State was required to first prove that aggravated assault was a crime of violence before it could request and be entitled to Jury Instruction S-7, which instructed the jury that aggravated assault was a crime of violence for the purposes of the deliberations. Additionally, in order to prove the aggravating *1222 circumstance that Blue was under a sentence of imprisonment at the time of this murder, the State had to show when the guilty plea was entered and some indication of the length of the sentence. Such proof was essential to show that Blue continued under that sentence at the time of this murder. We find that this was clearly relevant evidence properly admitted as proof of the two aggravating factors offered by the State. Lockett v. State, 517 So.2d 1317, 1337 (Miss. 1987); Evans v. State, 422 So.2d 737, 742 (Miss. 1982).
However, this Court, having concluded that the underlying facts of the indictment were relevant, must now address the issue of whether it was prejudicial. Relevant evidence is inadmissible where its probative value is substantially outweighed by, inter alia, the danger of unfair prejudice. M.R.E. 403. Determining whether evidence is prejudicial requires a balancing test. Foster v. State, 508 So.2d 1111, 1117 (Miss. 1987). Thus, the more probative the evidence, the less likely that the existence of a prejudice will outweigh its value. Id. Also, since the balancing test is not mandatory by virtue of the use of the word "may" in the rule, it is within the trial court's discretion to apply the test. Id. at 1117-1118; see M.R.E. 403.
In the case sub judice, the trial court allowed the indictment because he reasoned it was the only way the jury could understand the previously admitted guilty plea to the aggravated assault charge. Apparently, the court felt that it was of optimum importance that the jury understand the nature of Blue's guilty plea. It was in his discretion to do so. Williams v. State, 543 So.2d 665, 667 (Miss. 1989). We hold that the trial judge did not abuse his discretion in finding that the probative value of the evidence outweighed any prejudicial effect.
There is no merit to this issue.

XVI. WHETHER THE TRIAL COURT ERRED IN INSTRUCTING THE JURY IN SUCH A WAY AS TO RELIEVE THE STATE OF ITS BURDEN OF PROVING THAT THE AGGRAVATING CIRCUMSTANCES OUTWEIGH THE MITIGATING CIRCUMSTANCES AND IN PEREMPTORILY INSTRUCTING THE JURY TO FIND THE PRIOR VIOLENT FELONY AGGRAVATING CIRCUMSTANCE.
At trial, Blue objected to instruction S-1 on the ground that "the jury has to be instructed that they have to first find that there are any aggravating circumstances." The court responded that "they're told what they've got to do [in part C], and then they're told the aggravating circumstances, and you've got to find them." Part C of the instruction provides the language to be used by the jury in their verdict and requests that they list the aggravating circumstance(s) that they found "beyond a reasonable doubt." The defense did not request a burden of proof instruction.
Blue contends that the wording of Sentencing Instruction S-1 and S-7 improperly shifted the burden of proof from the prosecution to the defense. Instruction S-1 provided:
Next to return the death penalty, you must find that the mitigating circumstances  those which tend to warrant the less severe penalty of life imprisonment  do not outweigh the aggravating circumstances  those which tend to warrant the death penalty... .
If one or more of the above aggravating circumstances is found to exist, then you must consider whether there are mitigating circumstances which outweigh the aggravating circumstance(s)... .
If you find from the evidence that one or more of the preceding elements of mitigation exists, then you must consider whether it (or they) outweigh(s) or overcome(s) the aggravating circumstance(s) you previously found. In the event that you find that the mitigating circumstance(s) do not outweigh or overcome the aggravating circumstance(s), you may impose the death sentence. Should you find that the mitigating circumstance(s) outweigh or overcome the aggravating circumstance(s), you shall not impose the death sentence.
*1223 Instruction S-7 provided:
The Court instructs the Jury that the crime of aggravated assault is a felony involving the use or threat of violence to a person within the definition of these instructions.
Because Blue argued separately about the two instructions they will be discussed separately. This Court notes again, however, that this assignment of error is procedurally barred. The record reflects that, although defense counsel objected to Instruction S-1, nevertheless, the objection had nothing to do with the shifting of the burden. Rather, Blue's objection was based solely on the theory that the instruction was confusing. Therefore, we hold that this claim is procedurally barred for the failure to interpose an objection on the ground now being argued on appeal. Blue cannot put the trial court in error on an issue not presented to the court. Chase, 645 So.2d at 835. Instruction S-7 is procedurally barred because defense counsel failed to make any objection whatsoever. Id.
Procedural bar aside, we address the issue on its merits.

A. Instruction S-1
Blue takes issue with the language in S-1 which instructs the jury that the mitigating circumstances must outweigh the aggravating circumstances. Blue argues that this language shifts the State's burden of proving the aggravating circumstances and is therefore in violation of the Eighth Amendment. See Walton v. Arizona, 497 U.S. 639, 650, 110 S.Ct. 3047, 3055, 111 L.Ed.2d 511, 526 (1990) (in capital sentencing hearings, it is Eighth Amendment error to allocate the burdens of proof in a manner which lessens the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances).
This Court has addressed this issue in many cases. Our most recent revisiting of the issue was Conner v. State, 632 So.2d 1239, 1278 (Miss. 1993). In rejecting this same argument, the Conner Court pointed to Shell v. State, 554 So.2d 887, 904 (Miss. 1989) rev'd on other grounds, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990). In Shell, this Court stated:
This same issue was decided by this Court in Jordan v. State, 365 So.2d 1198 (Miss. 1978):
Essentially, Jordan contends that "the guidelines of Jackson appear to require the Defendant to shoulder the burden of proof of mitigating circumstances versus aggravating circumstances." Jackson simply holds, however that one on trial for the charge involved here must be given an opportunity to present any "circumstances or combination of circumstances surrounding his life and character or the commission of the offense with which he is charged that would be reasonably relevant to the question of whether he should suffer death" or life imprisonment.
Shell, 554 So.2d at 904.
This Court also addressed this issue in Stringer v. State, 500 So.2d 928, 944 (Miss. 1986), stating:
The language of the instruction, that he mitigating circumstances must be found to outweigh the aggravating circumstances, the language of the statute. Section 99-19-101(3)(c) requires the jury to find "[T]hat there are insufficient mitigating circumstances, as enumerated in subsection (6), to outweigh the aggravating circumstances." In Gray v. Lucas, 677 F.2d 1086 (5th Cir.1982), cert. denied, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983), the appellant sought to show that the statute impermissibly shifted the burden of proof to the defendant. The court ruled that it did not, saying that "the Mississippi Supreme Court has construed its capital punishment statute to place the burden of proving any aggravating circumstances on the prosecution."
In yet another case, Turner v. State, 573 So.2d 657 (Miss. 1990), this Court rejected this argument. The Turner Court stated:
The instructions complained of by the appellant have passed the scrutiny of this Court and the federal courts. In Gray v. Lucas, 677 F.2d 1086 (5th Cir. 1982), cert. denied, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983), the Fifth Circuit said that the Mississippi Supreme Court has construed its capital punishment statute to *1224 place the burden of proving aggravating circumstances on the prosecution; that Mississippi prevents a jury from imposing the death penalty, if the mitigating factors outweigh the aggravating factors; and that, therefore it stands to reason that the jury must find that the aggravating circumstances outweigh the mitigating circumstances in order to impose a death penalty.
Turner, 573 So.2d at 668.
This Court's precedent case law mandates the conclusion that this assignment of error is without merit.

B. Instruction S-7
Blue also takes issue with the language in S-7. Once again we note that Blue failed to object. The record also reflects that even the court reporter raised the questions concerning this instruction when she asked the trial court judge, "All right." What did you do with 7? Whereupon, the trial court replied, "I gave it." "No objection," asked the court reporter. The trial judge responded, "No objection." Blue's failure to object warrants this Court in applying the procedural bar to this issue. Foster, 639 So.2d at 1270; Chase, 645 So.2d at 835. Blue is thus barred from raising this claim on appeal.
Procedural bar notwithstanding, we consider the issue on the merits. Blue argues that S-7 violated the federal due process clause because it created an irrebuttable presumption that the aggravated assault was a violent crime. Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (there is a constitutional requirement that a conviction be supported by proof of every fact necessary to constitute the crime charged); In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) (due process protects against conviction except upon proof beyond reasonable doubt of every fact necessary to constitute crime).
Specifically Blue urges that where the jury is instructed that aggravated assault is a crime of violence, the State is impermissibly relieved of the necessity of proving that the aggravated assault in question was indeed a violent crime. Blue asserts that in the instant case, the State was given what amounted to a peremptory instruction on an element necessary to establish the aggravating circumstance of a prior felony involving violence and relieved of its burden of proving that the aggravating circumstances must outweigh the mitigating circumstances. Therefore, Blue asserts, the resulting death sentence should be reversed. Section 97-3-7(2)(b) of the Mississippi Code Annotated provides that a person is guilty of aggravated assault where a person "attempts to cause or purposely and knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm." (emphasis added). This is the previous crime under which Blue was charged and found guilty in 1992. The crime apparently involved Blue using a pistol to cause injury. Clearly the very use of a pistol to injure someone intimates violence. We hold, therefore, in this instant, the prosecution had no burden to bear because aggravated assault by its very definition signifies violence. The facts of the crime for which he was convicted clearly showed the aggravated assault conviction to be for a crime of violence. Conner v. State, 632 So.2d 1239, 1268-69 (Miss. 1993) (not error to give instruction that robbery is a crime of violence at sentencing phase).
This issue is procedurally barred and alternatively without merit.

XVII. WHETHER THE TRIAL COURT VIOLATED THE EIGHTH AMENDMEN AND STATE LAW BY INSTRUCTING THE JURY TO DISREGARD SYMPATHY IN REACHING ITS SENTENCING DECISION.
During the sentencing phase, the court granted the following instruction:
The Defendant has been previously found guilty of the crime of Capital Murder. You must now decide whether the Defendant will be sentenced to death or life imprisonment. In reaching your decision, you may objectively consider the detailed circumstances of the offense for which the Defendant was convicted, and the character and record of the Defendant *1225 himself. You should consider and weigh any aggravating and mitigating circumstances, as set forth later in this instruction, but you are cautioned not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.
* * * * * *
In the event that you find that the mitigating circumstance(s) do not outweigh or overcome the aggravating circumstance(s), you may impose the death sentence. Should you find that the mitigating circumstance(s) outweigh or overcome the aggravating circumstance(s), you shall not impose the death sentence.
Blue failed to object to the anti-sympathy language in the instructions. Blue's failure to object and thus preserve that objection for appeal requires that this Court again impose the procedural bar to this issue. Foster, 639 So.2d at 1270; Chase, 645 So.2d at 835.
Procedural bar notwithstanding, alternatively, we consider the issue on the merits. Blue contends that the law is well settled that capital sentencing instructions are the vehicle whereby jurors are empowered to render the moral and compassionate response to the mitigating evidence presented by the defendant. Therefore, Blue asserts, the anti-sympathy instruction given at trial clearly violated state law and, in that it limited the jury's consideration of mitigation evidence, violated the Eighth and Fourteenth Amendment to the Federal Constitution. In support of this argument, Blue relies on the following: Pinkney v. State, 538 So.2d 329, 351 (Miss. 1988) ("a jury may not be instructed to disregard, in toto, sympathy"); Parks v. Brown, 860 F.2d 1545, 1552-59 (10 Cir.1988) (en banc), rev'd on other grounds sub. nom., Saffle v. Parks, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (Court held that the Eighth Amendment would be violated if the jury misunderstood the "anti-sympathy" instruction to mean that they were prohibited from exercising a moral or compassionate response to mitigation); Chenault v. Stynchcombe, 581 F.2d 444, 448 (5th Cir.1978) (capital sentencing instructions must clearly instruct the jury about mitigating circumstances and the option to recommend against death).
The exact language now being challenged has previously been used in a jury instruction. Willie v. State, 585 So.2d 660 (Miss. 1991). In that case, the instruction stated in pertinent part:
You should consider and weigh any aggravating and mitigating circumstances, ... . but you are cautioned not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion, or public feeling.
585 So.2d at 677. In rejecting the defendant's argument that the instruction was improper, this Court stated:
The United States Supreme Court has found that the anti-sympathy language used in the preceding instruction passes constitutional muster. California v. Brown, 479 U.S. 538, 542-43, 107 S.Ct. 837, 839-40, 93 L.Ed.2d 934 (1987). We find that because the instruction does not inform the jury that it must disregard in toto sympathy and leaves the jury the option to vote for or against the death penalty, the instruction is a proper statement of the law. See Pinkney v. State, 538 So.2d 329, 351 (Miss. 1988), vacated on other grounds, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990); Williams v. State, 544 So.2d 782, 788 (Miss. 1987). This argument has no merit.
Willie, 585 So.2d at 677.
Based on the Willie holding, the instruction given in the instant case is acceptable. The issue is procedurally barred and alternatively, without merit.

XVIII. WHETHER THE GRANTING OF SENTENCING INSTRUCTION S-1 IN CONJUNCTION WITH THE REFUSAL TO GRANT SENTENCING INSTRUCTION DS-4 ACTED AS A LIMIT ON THE PRESENTATION OF MITIGATION EVIDENCE IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.
Instruction S-1 requires that the jury unanimously find that Blue intentionally *1226 killed Turntine, that aggravating circumstances exist, and that the mitigating circumstances do not outweigh the aggravating circumstances. The defense requested that the jury be instructed:
you, as individual jurors, must consider mitigating circumstances. Therefore, even if all other eleven jurors find that a certain mitigating circumstance does not exist, if you believe it does exist, you must find that mitigating circumstance, and weigh it in your further deliberations.
The court refused the instruction reasoning that the instruction was contrary to case law, and that the jury must first find aggravating circumstances and then weigh them against mitigating circumstances.
Blue contends that the instructions in the instant case repeatedly refer to findings that must be made unanimously by the jury without explaining that mitigating circumstances are exempt from this rule. Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) ("it would be the height of arbitrariness to allow or require the imposition of the death penalty" where the vote of a single juror could preclude the consideration of relevant mitigating evidence). Consequently, Blue argues, reasonable jurors may have interpreted the instructions to exclude relevant mitigation of which all twelve jurors may not have agreed. Blue contends that the instructions violated the Eighth and Fourteenth Amendments of the United States Constitution. Therefore, Blue submits, his death sentence should be reversed.
"[A] jury instruction which requires the jury to unanimously find mitigating circumstances in the balancing process `impermissibly limits the jury's consideration of mitigation evidence' and violates the Eighth Amendment." Conner v. State, 632 So.2d 1239, 1272 (Miss. 1993) citing McKoy v. North Carolina, 494 U.S. 433, 442-44, 110 S.Ct. 1227, 1233-34, 108 L.Ed.2d 369 (1990).
Blue's claim is without merit because this Court has, on numerous occasions, rejected similar claims concerning this issue. Chase v. State, 645 So.2d 829 (Miss. 1994); Conner v. State, 632 So.2d at 1271-73; Hansen v. State, 592 So.2d 114, 149-150 (Miss. 1991); Willie v. State, 585 So.2d at 680; Turner v. State, 573 So.2d at 668; Ladner v. State, 584 So.2d at 760; Shell v. State, 554 So.2d 887 (Miss. 1989).
In the case sub judice, the words "unanimously" or "unanimous" are found throughout the aggravating circumstances portion of the jury instruction. However, in the mitigation portion of the jury instruction there is no mention of the degree of consensus required. Blue argues that where the jury is instructed that aggravating circumstances must be found unanimously and receives no instruction concerning the degree of consensus required of the mitigating circumstances, reasonable jurors may conclude that mitigating circumstances must also be determined unanimously. Indeed, the North Carolina Supreme Court held as much in State v. McNeil, 327 N.C. 388, 395 S.E.2d 106 (1990). See also Engberg v. Meyer, 820 P.2d 70 (Wyo. 1991); Brantley v. State, 262 Ga. 786, 427 S.E.2d 758 (1993).
This Court has recognized that an instruction which prohibits, expressly or impliedly, the consideration of mitigation circumstances not found unanimously is flawed and requires reversal. Shell v. State, 554 So.2d 887, 905 (Miss. 1989) rev'd on other grounds, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990).
However, this Court has expressly rejected the view of the North Carolina case in Hansen v. State, 592 So.2d 114 (Miss. 1991), cert. denied, 504 U.S. 921, 112 S.Ct. 1970, 118 L.Ed.2d 570 (1992). In Hansen, the defendant, on appeal, complained that the jurors were never instructed affirmatively that they should individually consider the evidence in mitigation. Upon consideration of this issue this Court stated, in pertinent part, the following:
The jury was instructed that they could employ only such aggravating circumstances as they found (a) unanimously and (b) beyond a reasonable doubt. The Court then told the jury it might consider in opposition mitigating circumstances, gave a loose definition of what those might be, but omitted any burden such as unanimity or beyond-a-reasonable-doubt, only that the jurors consider mitigating circumstances *1227 that "are" and thus "exist." Finally, the jury was instructed that, before it could return a sentence of death, it must find beyond a reasonable doubt both that (a) the aggravating circumstances outweigh the mitigating circumstances and (b) that Hansen should be put to death, burdens we have not ordinarily heretofore imposed.
... .
The mitigating circumstances portion of the instruction does not contain "unanimous" or "unanimously." Only the aggravating circumstances part contains these words. No instructions says, implies or intimates to any reasonably literate juror that he or she should await unanimity before considering a mitigating circumstances. The issue contains no error.
592 So.2d at 149-50. (emphasis added) (citations omitted). In light of Hansen, there is little room for debate that instruction S-1 was properly received. Furthermore, as the State points out, this Court has rejected arguments on the same ground in many other cases. Trial judges have confidently relied upon these cases and have continuously rejected this issue.
We hold that the trial court's refusal of instruction DS-4 was not reversible error. Pursuant to Hansen and its progeny, Conner, Turner, Ladner, and Willie, instruction S-1 sufficiently instructed the jury that no degree of consensus on mitigating circumstances is required. Thus, the jury can impliedly be charged with knowledge that unanimous findings of mitigating circumstances is not required, rendering instruction DS-4 unnecessary or at least redundant.
While S-1 sufficiently instructed the jury pursuant to Hansen, nevertheless, DS-4 was an unambiguous correct statement of the law. This Court, as we have done on other occasions, encourages trial judges to approve this instruction when offered in this exact language and submit it to juries in the future. While S-1 remains a valid instruction, DS-4, a correct statement of the law cannot help but render additional light on the subject matter and issue involved. Gossett and May v. State, 660 So.2d 1285 (Miss. 1995). See also Robinson v. State, 434 So.2d 206, 207 (Miss. 1983); Flowers v. State, 473 So.2d 164, 165 (Miss. 1985) (overruling Robinson v. State, to extent that it merely criticized instead of condemned instruction which it replaced).
There is no merit to this issue.

XIX. WHETHER SENTENCING INSTRUCTION S-1 WAS DEFECTIVE IN A MANNER WHICH VIOLATES STATE LAW AND THE EIGHTH AMENDMENT.
Blue asserts a two-pronged attack on sentencing instruction S-1. Blue failed to assert either of these claims at trial. Therefore, the assignment of error is procedurally barred. Foster v. State, 639 So.2d at 1270. Procedural errors aside, alternatively, this Court addresses the merits of this issue.

A. Requirements for Unanimity.
Blue contends that instruction S-1 failed to provide a means for the jury to indicate that they were not unanimous for either life imprisonment or the death penalty. Blue argues that the failure of the verdict form to give effect to the decision of any one jury that mitigation outweighs aggravation contravenes the Eighth Amendment. Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). Blue asserts that this exact question was decided by the United States Court of Appeals for the Seventh Circuit in an Illinois death penalty case. Kubat v. Thieret, 867 F.2d 351, 371 (7th Cir.1989).
In Kubat, it was argued on appeal by the defendant sentenced to death that the jury instructions were erroneous and violated due process. In vacating the death sentence, the Seventh Circuit Court of Appeals stated:
Kubat's jurors were never expressly informed in plain and simple language that if even one juror believed that the death penalty should not be imposed, Robert Kubat would not be sentenced to death.
... .
Accordingly we hold that the erroneous instructions violated the Eighth and Fourteenth *1228 Amendments and, on this basis alone, Kubat's sentence cannot stand.
Id. at 373-74.
The State correctly contends that Blue's reliance on Kubat is misplaced. The State argues that Kubat was decided on the basis that at every turn the jury was instructed that they must unanimously find every element before returning a verdict. In the instant case, the State asserts, that no where in the instruction at bar is the jury required to find mitigating circumstances unanimously.
This Court has considered this exact question in King v. State, 421 So.2d 1009 (Miss. 1982). In King, the defendant complained that the trial court erred when it refused to allow the defendant to amend a jury instruction. The defendant argued, inter alia, that the jury was not fully instructed. Id. at 1018. In rejecting this argument this Court held:
We are of the opinion that no error was committed in refusing the appellant's requested amendment to his instruction.
First, the instruction as given, informed the juror that before they could sentence appellant to death, they must unanimously find one or more aggravating circumstance from the evidence beyond a reasonable doubt, and must further find there were insufficient mitigating circumstances to outweigh the aggravating circumstances. After being so instructed the jury returned ... [a] unanimous verdict... .
... .
There is no indication in the record that they had any difficulty reaching an agreement.
Secondly, the defendant's argument that the jury was not fully instructed overlooks the statutory duty imposed on the court by Mississippi Code Annotated section 99-19-103 (Supp. 1981) for the court to dismiss the jury after a reasonable period of deliberation and impose a life sentence on the defendant.
The argument creates an illusion of prejudice, which has no legal basis. If the jurors were unable to unanimously find that the aggravating circumstances were sufficient to impose the death penalty and that there were insufficient mitigating circumstances to outweigh the aggravating circumstances, then they could not return a death sentence. Further in the event they could not unanimously agree after a reasonable period of deliberation, it would be the trial judge's duty under Mississippi Code Annotated section 99-19-103 (Supp. 1981) to dismiss the jury and impose a sentence of life imprisonment on the defendant.
Id. at 1018 (footnote omitted). In sum, the Court held that the jury was fully instructed.
Contrary to Blue's contention, in the instant case, the instruction at issue does not provide for a unanimous decision for death and a unanimous decision for life. Rather, the instruction provides for a unanimous decision for death and a decision for life. The instruction does not require that the jury unanimously find for a life sentence. Whether the jury assumed that the decision for a life sentence was to be unanimous like the death sentence is debatable. While it may be argued that the jury may have construed the unanimity required of a death sentence decision to be also applicable to a life sentence, since the life sentence portion of the instruction does not speak to consensus. However, this Court has rejected a similar argument in Hansen v. State, 592 So.2d at 149-50, where it was argued that the jury may have erroneously transferred the requirement of unanimity for determining aggravating circumstances to determining mitigating circumstances. Furthermore, as this Court stated in King, "the defendant's argument that the jury was not fully instructed overlooks the statutory duty imposed on the court by Mississippi Code Annotated section 99-19-103 (Supp. 1981) for the court to dismiss the jury after a reasonable period of deliberation and impose a life sentence on the defendant." 421 So.2d at 1018. Thus, even if unanimity of jurors was required for the imposition of a life sentence, which it is not, and the juror(s) leaning toward a life sentence held out against his peers for a period of time, the trial court is obliged to dismiss the jury and impose a life sentence. Miss. Code Ann. § 99-19-103 (Supp. 1981).

*1229 B. Verdict Form.
Blue further contends that the verdict form portion of the instruction only provided a signature line for the form of the verdict accompanying the death sentence. Blue argues that this Court has previously determined that this defect has the effect of confusing the jury about its authority to return a sentence less than death. Jenkins v. State, 607 So.2d 1171, 1180 (Miss. 1992) (court expressed concern that jury instruction could cause the jury to neglect certain penalty options where jury instruction failed to designate line for foreman's signature line on the pages of all options except the form of the verdict for the death penalty). See also Chenault v. Stynchcombe, 581 F.2d 444 (5th Cir.1978).
The verdict form in this case is clearly the type which this Court expressed concern with in Jenkins v. State, 607 So.2d 1171 (Miss. 1992). Indeed, it is very suggestive to provide a signature line only under the verdict for the death penalty. On the other hand, as the State argues, if this Court finds error with the verdict form, such error was harmless. Despite the absence of the signature line under the life sentence verdict, the jury was instructed prior to deliberations that the death penalty was not the only option. Specifically, defense counsel stated, "I just want to point out that even if you don't find mitigating circumstances, you are still not required to give the death penalty."
We hold under the facts and arguments in this case that such error was harmless beyond a reasonable doubt as the jury was absolutely aware that the death penalty was not their only option.
We find the issue is procedurally barred and alternatively without merit.

XX. WHETHER THE DEATH PENALTY FOR JUVENILES WITHOUT ANY PARTICULARIZED FINDINGS BEING MADE BEFORE TRANSFERRING THE JUVENILE TO STAND TRIAL AS AN ADULT VIOLATES THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, § 28 OF THE MISSISSIPPI CONSTITUTION OF 1890.
Blue contends that the process of trying a juvenile who is alleged to have committed capital murder as an adult without the benefit of a preliminary determination by the juvenile court of particularized findings violates the Eighth Amendment prohibition against cruel and unusual punishment under the precedent of Stanford v. Kentucky, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989) and Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988) and the Fourteenth Amendment. Blue also contends that this process violates Art. 3, § 28 of the Mississippi Constitution, which contains an analogous prohibition against cruel and unusual punishment. Consequently, Blue asserts, his death sentence should be vacated.
Once again we hold that this assignment of error is procedurally barred due to Blue's failure to raise an objection on this ground at trial. Foster v. State, 639 So.2d at 1270; Chase v. State, 645 So.2d at 835.
Procedural errors aside, alternatively, we address the issue on the merits. This Court previously addressed this same issue in Foster and found it to be meritless. Furthermore, the State points out that Blue had previously been certified as an adult and pled guilty to aggravated assault in the circuit court prior to this case. The State, argues that pursuant to § 43-21-157(8) of the Mississippi Code Annotated (1972), once a youth has been certified as an adult, he is thereafter treated as an adult for all purposes. Section 43-21-157(8) provides:
When jurisdiction of an offense is transferred to the circuit court, the jurisdiction of the youth court over the youth is forever terminated for a delinquent act, except that such jurisdiction is not forever terminated if the circuit court transfers or remands the transferred case to the youth court or if a child who has been transferred to the circuit court is not convicted. However, when jurisdiction of an offense is transferred to the circuit court pursuant to this section, the circuit court shall thereafter assume and retain jurisdiction of any offenses committed by such youth subsequent to the date of transfer of such original *1230 offense and prior to the date of final disposition thereof by the circuit court, without complying with the requirements of the formal transfer proceedings which are set forth in this section. The circuit court may review the transfer proceedings on motion of the transferred child. Such review shall be on the record of the hearing in the youth court. The circuit court shall remand the offense to the youth court if there is no substantial evidence to support the order of the youth court. The circuit court may also review the conditions of custody or release pending criminal court proceedings.
The State asserts that having been previously convicted of aggravated assault, and consequently certified as an adult, Blue would not have been entitled to a youth court hearing for his capital murder charge, even if this were the law. We agree.
David Blue was seventeen years old at the time he is alleged to have committed capital murder. Generally, the youth court has exclusive jurisdiction over criminal cases brought against the defendants under the age of eighteen. See Miss. Code Ann. §§ 43-21-105(d) and 43-21-151(1) (1972). Where the youth court has such exclusive jurisdiction, juveniles may not be tried as adults unless the youth court, in its own discretion, decides to "transfer jurisdiction of the alleged offense ... or a lesser included offense to the criminal court which would have trial jurisdiction of such offense if committed by an adult." However, before transferring a juvenile for trial in the circuit courts, the youth court must first conduct a bifurcated hearing and (1) "determine ... [that] probable cause exists to believe that the child committed the alleged offense"; and (2) find "by clear and convincing evidence that there are no reasonable prospects of rehabilitation within the juvenile system." Miss. Code Ann. § 43-21-157(3)(4) (1972). Section 43-21-157(5) sets forth the factors as the criteria to be considered by the youth court in determining a child's reasonable prospects of rehabilitation within the juvenile justice system. Under Mississippi law, these juvenile certification procedures do not occur if a child commits an act, "which if committed by an adult would be punishable under state or federal law by life imprisonment or death," Miss. Code Ann. § 43-21-151(1), because original jurisdiction is vested automatically in the circuit court.
In Foster, this Court rejected the defendant's argument that his constitutional rights were violated because, as a minor, he was not afforded individualized consideration in the circuit court that would have been available to him in a certification hearing in the youth court. 639 So.2d at 1297. The Court opined that had the defendant bothered to request, he could have received the same individualized findings in the circuit court that minors who have committed crimes other than capital crimes receive in the youth court. Id. Furthermore, this Court stated
There is no constitutional impediment to the imposition of the death sentence on a seventeen year old under the Mississippi statute even though the age at which one may receive a death sentence for the crime of capital murder is implied rather than explicitly stated. There can be no doubt that under Mississippi law, no one under thirteen years of age may receive the death penalty because a child under the age of thirteen cannot even be charged with a felony.
Id. We hold that Blue would not have been eligible for a hearing in the youth court because he was previously certified as an adult when he was convicted of aggravated assault. The statute plainly states that once a juvenile has been certified as an adult, he will forever be treated as such, save a few exceptions of which Blue does not qualify. See Miss. Code Ann. § 43-21-157(8).
This issue is procedurally barred, and alternatively, without merit.

XXI. WHETHER SUBSECTIONS 43-21-151(1) AND XX-XX-XXX ARE UNCONSTITUTIONAL UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS IN THAT THEY DO NOT SET A MINIMUM AGE BELOW WHICH A CHILD MAY NOT BE TRANSFERRED FROM YOUTH COURT TO CIRCUIT COURT FOR CRIMES PUNISHABLE BY LIFE IMPRISONMENT OR DEATH.
*1231 Blue contends that Miss. Code Ann. §§ 43-21-151(1) and 99-19-101 (1972) combined violate the Eighth Amendment in that they do not evidence the thoughtfulness and attention required of capital punishment legislation. Blue argues that pursuant to Eighth Amendment jurisprudence, the death penalty should be treated distinctly from all other punishments. Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988) (O'Connor, J., concurring) (among the most important and consistent themes in this Court's death penalty jurisprudence is the need for special care and deliberation in decisions that may lead to the imposition of that sanction). Blue also argues that neither the Mississippi capital murder statute, nor the juvenile transfer statute set a minimum age at which a person may not be executed. Blue recognizes, however, that Miss. Code Ann. § 32-21-151 does provide that child who has not reached his thirteenth birthday cannot be criminally responsible. Thus, Blue concedes, a child who is twelve years old and younger cannot be executed. However, Blue asserts, the effect of the aforementioned statutes combined would indicate that a thirteen year old child may be executed. This result, Blue further asserts is "surely" unconstitutional under the Eighth Amendment and the United States Supreme Court decision in Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988). Blue argues that the effect of not providing specific guidelines and not setting specific ages for the imposition of the death penalty, which would evidence the careful consideration necessary to uphold a sentence of death, renders the Mississippi statutes unconstitutional under the Eighth Amendment. As a result, Blue submits, he did not receive the individual analysis required in cases where the death penalty may be imposed.
Once again we hold, this assignment of error is procedurally barred due to Blue's failure to raise an objection to the constitutionality of the pertinent statutes at trial. Foster, 639 So.2d at 1270; Chase, 645 So.2d at 835. Procedural errors aside, we find alternatively considering the issue on the merits, this issue, like the preceding issue, is foreclosed by the Foster decision.
Blue argues, that the Mississippi statutory scheme does not place a minimum age restriction on the imposition of the death penalty. However, in the Foster decision, this Court opined that Miss. Code Ann. § 43-21-151(3) (1972), implies, rather that explicitly states, that no child under age thirteen can be sentenced to death in Mississippi. Furthermore, it is sufficiently clear that no national consensus forbids the imposition of capital punishment on sixteen or seventeen year old capital murderers. Stanford v. Kentucky, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989).
In the instant case, Blue was seventeen years old when he allegedly committed capital murder. As in Foster, once again we hold that although the Mississippi statutory scheme does in fact lack age specificity, there is a very strong statutory inference that the death penalty cannot be imposed on an individual who is under thirteen years of age. More importantly, no constitutional quagmires exist, because Blue committed his crime at an age where "it is sufficiently clear that no national consensus forbids the imposition of capital punishment." Wilkins v. Missouri, 492 U.S. 361, 380-81, 109 S.Ct. 2969, 2981, 106 L.Ed.2d 306 (1989) (emphasis added); Stanford, 492 U.S. 361, 370-73, 109 S.Ct. 2969, 2975-77 (1989). See also Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687. Thus, the lack of age specificity in the Mississippi death penalty scheme does not provide Blue with a meritorious ground for challenge.
This issue is both procedurally barred, and alternatively, without merit.

XXII. WHETHER THE AGGRAVATING CIRCUMSTANCE "THAT THE CAPITAL OFFENSE WAS ESPECIALLY HEINOUS, ATROCIOUS, OR CRUEL" WAS SUBMITTED TO THE JURY IN A MANNER THAT VIOLATED STATE LAW AND THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
*1232 Instruction S-1 allowed the jury to consider whether the capital offense was "especially heinous, atrocious or cruel" as an aggravating circumstance.
Blue contends that the Mississippi "especially heinous" aggravator in general, and the attempt to define it in Instruction S-3 fail the test set forth in Godfrey v. Georgia, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764-65, 64 L.Ed.2d 398 (1980) (where aggravating circumstances are used to channel the discretion of the jury in imposing capital punishment, such circumstances must set forth "clear objective standards that provide specific and detailed guidance, and that make rationally reviewable the process for imposing a sentence of death") and Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (same standard). See Mhoon v. State, 464 So.2d 77, 85 (Miss. 1985) (the especially "heinous, atrocious or cruel" aggravator should be defined in a manner that limits the jury's discretion so as to meet the standards of Godfrey); Pinkney v. State, 538 So.2d 329, 357 (Miss. 1988) (reaffirmed the requirement that an adequate and concrete instruction defining vague aggravating circumstance must be communicated to the jury). Blue argues that the limiting instruction given in the present case failed to cure the vague "especially heinous" aggravator. In making this argument, Blue acknowledges that this Court's holding in Jenkins v. State, 607 So.2d 1171, 1182 (Miss. 1992) and Conner v. State, 632 So.2d 1239 (Miss. 1993) approves the language of Instruction S-3. However, Blue requests that this Court reassess its position in Jenkins.
The State correctly contends that this argument is foreclosed by this Court's decision in Jenkins and Conner. In Jenkins, the limiting instruction contained the exact language being challenged here. This Court recognized that the first paragraph of the instruction was faulty. This Court stated
This portion of the limiting instruction is taken from the Fifth Circuit Court of Appeal's decision in Spinkellink v. Wainwright, 578 F.2d 582, 611 (5th Cir.1978)... . The instruction was recently deemed inadequate, however in the U.S. Supreme Court decision of Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990). In Shell, the high Court reviewed the use of the above instruction and in a per curiam decision found that "[a]lthough the trial court in this case used a limiting instruction to define the `especially heinous, atrocious, or cruel' factor that instruction is not constitutionally sufficient." Shell, 498 U.S. at 1, 111 S.Ct. at 313, 112 L.Ed.2d at 4. In short, the Shell Court found that part one of our limiting instruction was insufficient to adequately channel the jury's discretion.
Jenkins, 607 So.2d at 1181.
However, this Court concluded that this portion of the instruction was rectified by the further language of the instruction because it narrowed the aggravating factor. This Court stated:
This language was approved by this Court in Coleman v. State, 378 So.2d 640, 648 (Miss. 1979)... . The language was also approved by the U.S. Supreme Court in the recent case of Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). In Clemons, the Supreme Court reviewed our finding that the above limiting instruction was proper.
Jenkins, 607 So.2d at 1181.
This Court found that the final portion of the instruction was also allowable since the same language given in Pinkney v. State, 538 So.2d 329, 357 (Miss. 1988), vacated on other grounds, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990), had not been addressed by the U.S. Supreme Court. The Court concluded:
On balance we believe that [the instruction] was a proper limiting instruction for the "especially heinous, atrocious, and cruel" aggravator. Shell determined that part one of [the instruction], when given alone, was constitutionally insufficient. The [Supreme] Court did not find, however, that the instruction was erroneous or whether supplemental instructions could cure the deficiency. In today's case, the inadequate Shell instruction is reinforced by the constitutionally valid language from *1233 Clemons and the unrejected language from Pinkney. Thus, when the instruction is read as a whole, see Anderson v. State, 381 So.2d 1019, 1024 (Miss. 1980), the "especially heinous" aggravating circumstances was properly narrowed for the jury's consideration.
Jenkins, 607 So.2d at 1182.
After careful consideration, this Court must agree with the State's assertion that this issue need not be revisited by this Court. Jenkins was reaffirmed a year later in Conner, 632 So.2d at 1269-71, and neither case has been, to date, altered or overruled. There is no merit to this issue.

XXIII. WHETHER BLUE WAS DEPRIVED OF HIS RIGHT TO PRESENT RELEVANT MITIGATION EVIDENCE BY THE TRIAL COURT'S ERRONEOUS EVIDENTIARY RULING.
During trial, the defense informed the court that a woman named Tashia McLemore came to Stuckey's law office and informed Katherine Stuckey, an attorney in Stuckey's office, that she (Tashia) was arrested on July 16 and was placed in a city jail where Redman and Lonzo Terry were being held. Terry allegedly told McLemore that he had sex with Turntine and that he and Redman grabbed the purse and ran in the opposite direction from Blue. He also allegedly stated that Blue killed Turntine. Defense counsel Stuckey informed the court that he had not had a chance to talk to her personally, as Tashia had no phone and she was not present when he visited her home. The court informed the defense that it would be glad to issue a subpoena. Defense counsel stated that he thought that this information was hearsay and that the only way they could get it before the jury was by way of an exception to the hearsay rule. The defense stated that it would call Terry and let him deny that he made the statement to McLemore. The following colloquy transpired regarding this information after which there was no further mention of McLemore in the record:

BY MRS. BRIDGES: Judge, as I recall, you are not entitled to prove a fact by impeached testimony.

BY THE COURT: Well, I think there would have to be a cautionary instruction that that statement was not for proof of the fact stated, but for impeachment purposes only. That way, it would be a cautionary instruction.
... .

BY MRS. BRIDGES:  for the jury to consider. So, the State would move in limine for a ruling as to that.

BY MR. STUCKEY: Well, it certainly wouldn't prove the truth of the matter stated, but it would prove that the statement was made, and then the jury could decide whether or not  you know, to give it whatever weight they want to.

BY THE COURT: Well, you can't give it any weight  probative weight if it is purely for impeachment purposes. They would be determining whether to give the witness credibility. If that's the case, and he said, no, I didn't make any such statement, they can
... .

BY THE COURT: If ya'll can find me a rule that we can put it in, in some form or fashion, but I don't know of any rule that would allow that in.

BY MR. MOUNGER: We don't pretend at this point to know one either, Judge.
Blue contends that the trial court erred in excluding the testimony of McLemore as inadmissible hearsay. Blue argues that even if the testimony was hearsay, it falls within an exception to the hearsay rule, M.R.E. 804(b)(3). Blue argues that Terry's confession, a statement against his penal interest, to McLemore, was admissible if he was unavailable, and there were sufficient corroborating circumstances to ensure the trustworthiness of the confession. Blue asserts that both of these requirements have been or would have been met. Blue argues that Terry would have most certainly invoked his Fifth Amendment privilege, thereby making him unavailable. Additionally, Blue argues that McLemore's testimony was trustworthy because it was supported by physical evidence. Thus, Blue asserts, the exclusion of this relevant mitigating evidence violated the Eighth Amendment of the United States Constitution and Article 3, § 28 of the Mississippi *1234 Constitution and the death sentence should therefore be vacated.
We hold that this assignment of error is without merit. The record indicates that McLemore was never called as a witness. Thus, we find that the issue of whether her testimony was erroneously excluded is moot. Furthermore, Terry was also never called to testify. As a result, Blue's argument with regards to what Terry would have done once he was called to the stand is mere speculation. Again, we hold that the issue is moot. Even if Terry had been called to testify and subsequently invoked his Fifth Amendment privilege, making him unavailable, M.R.E. 804(a)(1), McLemore's testimony regarding Terry's alleged confession would, nevertheless, have been inadmissible.
This Court has recognized that a criminal defendant and the State have the right to call a witness to the stand even though the witness intends to invoke his Fifth Amendment privilege against self-incrimination. Hall v. State, 490 So.2d 858, 859 (Miss. 1986). Invoking this privilege makes the witness unavailable and consequently, any hearsay statements from another witness about what the unavailable witness said, falls within the hearsay exception. M.R.E. 804(b)(3). However, when the witness invokes his Fifth Amendment right, i.e. making neither a denial nor an admission, such responses are not the proper subject for impeachment. Williamson v. State, 512 So.2d 868, 874 (Miss. 1987), implicitly overruled on unrelated grounds by Hansen v. State, 592 So.2d 114, 134 (Miss. 1991). In the instant case, had McLemore been called to testify, her hearsay testimony regarding Terry's alleged confession would have been admissible if it were used for a purpose other than impeachment. However, the record indicates that impeachment was the sole purpose for McLemore's testimony. Thus, had McLemore been called to testify, her testimony would have been inadmissible hearsay. Conjecture aside, the facts are that Terry was not called as a witness and did not invoke his Fifth Amendment privilege. Thus, any suggestions as to what Terry would have done is, at best, speculation and cannot suggest error.
There is no merit to this issue.

XXIV. WHETHER THE DEATH SENTENCE IS DISPROPORTIONATE IN THIS CASE CONSIDERING THE UNIQUE CHARACTERISTICS OF DAVID BLUE.
Blue contends that, although executing juveniles and mentally retarded persons is constitutional, imposing the death penalty on a mentally retarded juvenile is violative of the principles underlying the Eighth and Fourteenth Amendments to the United States Constitution and Art. 3, § 28 of the Mississippi Constitution of 1890. Blue submits that he is and was suffering extensive and complex mental problems. Blue contends that at the time the victim was killed, Blue was a mentally retarded juvenile suffering from chemical dependency, economic and emotional poverty and other mental disorders. Consequently, Blue argues, he is incapable of achieving the culpable mental state required of a death sentence. In other words, Blue asserts, the death penalty is disproportionate based on his inability to appreciate the severity of his conduct.
At trial the following was established by defense witness Dr. MacVaugh: (1) that Blue was mildly mentally retarded; (2) that he abused and was dependent on alcohol and drugs; (3) that the dependency or at least the use of alcohol began at an early age; (4) that Blue came from a dysfunctional family; (5) that he had no positive role models in his home; and (6) that Blue had a deficient ability to apply common sense to matters involving getting along with others or abiding by societal norms.
This Court is statutorily required to determine "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant." Miss. Code Ann. § 99-19-105(3)(c). This does not mean that this Court is under an obligation to review all capital murder sentences to determine whether the death sentence is proportionate in the instant case. Gray v. State, 472 So.2d *1235 409, 420 (Miss. 1985). However, "this Court must determine whether the sentence imposed here is excessive or disproportionate to the penalty imposed in similar cases since Jackson v. State, 337 So.2d 1242 (Miss. 1976)." Wiley v. State, 484 So.2d 339, 355 (Miss. 1986), overruled on other grounds Willie v. State, 585 So.2d 660, 681 (Miss. 1991). Although Blue cites a plethora of cases in support of this argument, none of them regard a defendant in a similar situation where the death penalty was vacated.
The case most analogous to the instant case is Foster v. State, 639 So.2d 1263 (Miss. 1994). In that case, the defendant, a minor at the time he committed capital murder raised the identical argument which was addressed and rejected by this Court. With regard to the defendant's alleged mental infirmities, other than his father's testimony that the defendant suffered head injuries at the age of twelve, the defendant did not present any documented evidence indicating his mental impairment. Foster, 639 So.2d at 1303. In fact, this Court noted, a report from Whitfield detailed that although the defendant had a low IQ, he had the ability to understand right from wrong and was not considered retarded. Id. Further, with regard to the defendant's age, this Court simply stated that there is no constitutional barrier to imposing the death penalty on persons the defendant's age or younger. Id. at 1304.
Blue's argument that it is unconstitutional to execute a minor and one who is mentally retarded is simply not supported by state or federal caselaw cited by Blue. The jury in the case sub judice was clearly allowed to consider Blue's low IQ which was a full scale score of 67. Mental retardation is not a bar to the execution of one convicted of capital murder, it is only a mitigating circumstance. Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); Foster, 639 So.2d at 1303-04; Neal v. State, 451 So.2d at 762 (Miss. 1984), cert. denied, Neal v. Mississippi, 469 U.S. 1098, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984). Neither Blue's age nor mental condition is a bar to his execution for the brutal murder of Mary Turntine. Blue's death sentence as determined by the jury is not disproportionate to the other sentences of death approved by this Court.
There is no merit to this issue.

XXV. WHETHER THE AGGREGATE ERROR IN THIS CASE REQUIRES REVERSAL OF THE CONVICTION AND DEATH SENTENCE.
Lastly, Blue contends that when viewing the prejudicial impact of the array of errors discussed under the preceding assignment of errors, it cannot be said that his trial met the exacting standards of reliability required by the Constitution. Eddings v. Oklahoma, 455 U.S. 104, 118, 102 S.Ct. 869, 878-79, 71 L.Ed.2d 1 (1982) (O'Connor, J., concurring). Blue fails to provide a listing of the errors which allegedly together have an adverse affect.
The State steadfastly maintains that no reversible error has been committed in the trial of this case. Further, the State submits that since there were no reversible error in either phase of the trial, there can be no cumulative error that necessitates reversal on this assignment. Foster v. State, 639 So.2d at 1303; Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir.1987) (Court of Appeals rejects argument that even if no individual claim entitles petitioner to relief, the claims collectively do not and states that "twenty times zero equals zero.").
"It is true that in capital cases, although no error, standing alone, requires reversal, the aggregate effect of various errors may create such an atmosphere of bias, passion and prejudice that they effectively deny the defendant a fundamentally fair trial." Conner v. State, 632 So.2d 1239, 1278 (Miss. 1993) quoting Woodward v. State, 533 So.2d 418, 432 (Miss. 1998). There is no cumulative error and this issue is without merit.

CONCLUSION
In the case sub judice, those arguments that do not fall prey to a procedural bar, are without merit. Other arguments by Blue were clearly subject to being procedurally barred. Blue asserts throughout his brief that this Court has routinely overlooked procedural *1236 bar where the error is of constitutional dimensions and incorrect aggravating circumstances. We do not find constitutional dimensions in the error alleged. We apply the procedural bar to each of these appropriate issues where Blue has failed to object or otherwise preserve his issue properly on appeal. A careful review of each of Blue's assignments of error reveals no basis for reversal. Blue's convictions and sentences are affirmed.
COUNT I: CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH AFFIRMED. EXECUTION DATE TO BE SET WITHIN SIXTY DAYS OF FINAL DISPOSITION OF THIS CASE PURSUANT TO MISS. CODE ANN. § 99-19-105(7) (SUPP. 1995) AND M.R.A.P. 41(a); COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE TO THIRTY YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED; COUNT III: CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IN COUNT III TO RUN CONSECUTIVE TO THE SENTENCE IN COUNT II.
DAN M. LEE, C.J., PRATHER, P.J., and JAMES L. ROBERTS, Jr., and MILLS, JJ., concur.
BANKS, J., dissents with separate written opinion joined by SULLIVAN, P.J., and McRAE, J.
PITTMAN, J., not participating.

APPENDIX

DEATH CASES AFFIRMED BY THIS COURT
Davis v. State, 660 So.2d 1228 (Miss. 1995).
Carr v. State, 655 So.2d 824 (Miss. 1995).
Mack v. State, 650 So.2d 1289 (Miss. 1994).
Chase v. State, 645 So.2d 829 (Miss. 1994).
Foster v. State, 639 So.2d 1263 (Miss. 1994).
Conner v. State, 632 So.2d 1239 (Miss. 1993).
Hansen v. State, 592 So.2d 114 (Miss. 1991).
[*]Shell v. State, 554 So.2d 887 (Miss. 1989), Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding, Shell v. State, 595 So.2d 1323 (Miss. 1992) remanding for new sentencing hearing.
Davis v. State, 551 So.2d 165 (Miss. 1989).
Minnick v. State, 551 So.2d 77 (Miss. 1988).
[*]Pinkney v. State, 538 So.2d 329 (Miss. 1988), Pinkney v. Mississippi, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding Pinkney v. State, 602 So.2d 1177 (Miss. 1992) remanding for new sentencing hearing.
[*]Clemons v. State, 535 So.2d 1354 (Miss. 1988), Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding, Clemons v. State, 593 So.2d 1004 (Miss. 1992) remanding for new sentencing hearing.
Woodward v. State, 533 So.2d 418 (Miss. 1988).
Nixon v. State, 533 So.2d 1078 (Miss. 1987).
Cole v. State, 525 So.2d 365 (Miss. 1987).
Lockett v. State, 517 So.2d 1346 (Miss. 1987).
Lockett v. State, 517 So.2d 1317 (Miss. 1987).
Faraga v. State, 514 So.2d 295 (Miss. 1987).
[*]Jones v. State, 517 So.2d 1295 (Miss. 1987), Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding, Jones v. State, 602 So.2d 1170 (Miss. 1992) remanding for new sentencing hearing.
Wiley v. State, 484 So.2d 339 (Miss. 1986).
Johnson v. State, 477 So.2d 196 (Miss. 1985).
*1237 Gray v. State, 472 So.2d 409 (Miss. 1985).
Cabello v. State, 471 So.2d 332 (Miss. 1985).
Jordan v. State, 464 So.2d 475 (Miss. 1985).
Wilcher v. State, 455 So.2d 727 (Miss. 1984).
Billiot v. State, 454 So.2d 445 (Miss. 1984).
Stringer v. State, 454 So.2d 468 (Miss. 1984).
Dufour v. State, 453 So.2d 337 (Miss. 1984).
Neal v. State, 451 So.2d 743 (Miss. 1984).
Booker v. State, 449 So.2d 209 (Miss. 1984).
Wilcher v. State, 448 So.2d 927 (Miss. 1984).
Caldwell v. State, 443 So.2d 806 (Miss. 1983).
Irving v. State, 441 So.2d 846 (Miss. 1983).
Tokman v. State, 435 So.2d 664 (Miss. 1983).
Leatherwood v. State, 435 So.2d 645 (Miss. 1983).
Hill v. State, 432 So.2d 427 (Miss. 1983).
Pruett v. State, 431 So.2d 1101 (Miss. 1983).
Gilliard v. State, 428 So.2d 576 (Miss. 1983).
Evans v. State, 422 So.2d 737 (Miss. 1982).
King v. State, 421 So.2d 1009 (Miss. 1982).
Wheat v. State, 420 So.2d 229 (Miss. 1982).
Smith v. State, 419 So.2d 563 (Miss. 1982).
Johnson v. State, 416 So.2d 383 (Miss. 1982).
Edwards v. State, 413 So.2d 1007 (Miss. 1982).
Bullock v. State, 391 So.2d 601 (Miss. 1980).
Reddix v. State, 381 So.2d 999 (Miss. 1980).
Jones v. State, 381 So.2d 983 (Miss. 1980).
Culberson v. State, 379 So.2d 499 (Miss. 1979).
Gray v. State, 375 So.2d 994 (Miss. 1979).
Jordan v. State, 365 So.2d 1198 (Miss. 1978).
Voyles v. State, 362 So.2d 1236 (Miss. 1978).
Irving v. State, 361 So.2d 1360 (Miss. 1978).
Washington v. State, 361 So.2d 61 (Miss. 1978).
Bell v. State, 360 So.2d 1206 (Miss. 1978).

DEATH CASES REVERSED AS TO GUILT PHASE AND SENTENCE PHASE
Giles v. State, 650 So.2d 846 (Miss. 1995).
Duplantis v. State, 644 So.2d 1235 (Miss. 1994).
Harrison v. State, 635 So.2d 894 (Miss. 1994).
Butler v. State, 608 So.2d 314 (Miss. 1992).
Jenkins v. State, 607 So.2d 1171 (Miss. 1992).
Abram v. State, 606 So.2d 1015 (Miss. 1992).
Balfour v. State, 598 So.2d 731 (Miss. 1992).
Griffin v. State, 557 So.2d 542 (Miss. 1990).
Bevill v. State, 556 So.2d 699 (Miss. 1990).
West v. State, 553 So.2d 8 (Miss. 1989).
Leatherwood v. State, 548 So.2d 389 (Miss. 1989).
Mease v. State, 539 So.2d 1324 (Miss. 1989).
Houston v. State, 531 So.2d 598 (Miss. 1988).
West v. State, 519 So.2d 418 (Miss. 1988).
Davis v. State, 512 So.2d 1291 (Miss. 1987).
Williamson v. State, 512 So.2d 868 (Miss. 1987).
Foster v. State, 508 So.2d 1111 (Miss. 1987).
Smith v. State, 499 So.2d 750 (Miss. 1986).
West v. State, 485 So.2d 681 (Miss. 1985).
Fisher v. State, 481 So.2d 203 (Miss. 1985).
Johnson v. State, 476 So.2d 1195 (Miss. 1985).
Fuselier v. State, 468 So.2d 45 (Miss. 1985).
West v. State, 463 So.2d 1048 (Miss. 1985).
*1238 Jones v. State, 461 So.2d 686 (Miss. 1984).
Moffett v. State, 456 So.2d 714 (Miss. 1984).
Lanier v. State, 450 So.2d 69 (Miss. 1984).
Laney v. State, 421 So.2d 1216 (Miss. 1982).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT
Reddix v. State, 547 So.2d 792 (Miss. 1989).
Wheeler v. State, 536 So.2d 1341 (Miss. 1988).
White v. State, 532 So.2d 1207 (Miss. 1988).
Bullock v. State, 525 So.2d 764 (Miss. 1987).
Edwards v. State, 441 So.2d 84 (Miss. 1983).
Dycus v. State, 440 So.2d 246 (Miss. 1983).
Coleman v. State, 378 So.2d 640 (Miss. 1979).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY
[*]Shell v. State, 554 So.2d 887 (Miss. 1989), Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding, Shell v. State 595 So.2d 1323 (Miss. 1992) remanding for new sentencing hearing.
[*]Pinkney v. State, 538 So.2d 329 (Miss. 1988), Pinkney v. Mississippi, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding, Pinkney v. State, 602 So.2d 1177 (Miss. 1992) remanding for new sentencing hearing.
[*]Clemons v. State, 535 So.2d 1354 (Miss. 1988), Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding, Clemons v. State, 593 So.2d 1004 (Miss. 1992) remanding for new sentencing hearing.
[*]Jones v. State, 517 So.2d 1295 (Miss. 1987), Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding, Jones v. State, 602 So.2d 1170 (Miss. 1992) remanding for new sentencing hearing.
Russell v. State, 607 So.2d 1107 (Miss. 1992).
Holland v. State, 587 So.2d 848 (Miss. 1991).
Willie v. State, 585 So.2d 660 (Miss. 1991).
Ladner v. State, 584 So.2d 743 (Miss. 1991).
Mackbee v. State, 575 So.2d 16 (Miss. 1990).
Berry v. State, 575 So.2d 1 (Miss. 1990).
Turner v. State, 573 So.2d 657 (Miss. 1990).
State v. Tokman, 564 So.2d 1339 (Miss. 1990).
Johnson v. State, 547 So.2d 59 (Miss. 1989).
Williams v. State, 544 So.2d 782 (Miss. 1987).
Lanier v. State, 533 So.2d 473 (Miss. 1988).
Stringer v. State, 500 So.2d 928 (Miss. 1986).
Pinkton v. State, 481 So.2d 306 (Miss. 1985).
Mhoon v. State, 464 So.2d 77 (Miss. 1985).
Cannaday v. State, 455 So.2d 713 (Miss. 1984).
Wiley v. State, 449 So.2d 756 (Miss. 1984).
Williams v. State, 445 So.2d 798 (Miss. 1984).
BANKS, Justice, dissenting:
Because it is my view that the combination of the ambiguous wording of sentencing instruction S-1, and the failure to give requested instruction DS-4 deprived the individual jurors of an appropriate instruction defining their duties under our statutory capital sentencing scheme, in conformity with the requirements *1239 of the Constitution of the United States, I dissent.
Instruction S-1 requires that the jury unanimously find that Blue intentionally killed Turntine, that aggravating circumstances exist, and that the mitigating circumstances do not outweigh the aggravating circumstances. The defense requested that the jury be instructed:
[Y]ou, as individual jurors, must consider mitigating circumstances. Therefore, even if all other eleven jurors find that a certain mitigating circumstance does not exist, if you believe it does exist, you must find that mitigating circumstance, and weigh it in your further deliberations.
The court refused the instruction reasoning that the instruction was contrary to law, and that jury must first find aggravating circumstances and then weigh them against mitigating circumstances.
Blue contends that instruction S-1, the primary sentencing instruction in this case, repeatedly refers to findings that must be made unanimously by the jury without explaining that mitigating circumstances are exempt from this rule. Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) ("it would be the height of arbitrariness to allow or require the imposition of the death penalty" where the vote of a single juror could preclude the consideration of relevant mitigating evidence). Consequently, Blue argues, reasonable jurors may have interpreted the instructions to exclude relevant mitigation, to which all twelve jurors may not have agreed. As a result, Blue contends, the instructions violate the Eighth and Fourteenth Amendments of the United States Constitution. Therefore, Blue submits, the death sentence should be reversed.
"[A] jury instruction which requires the jury to unanimously find mitigating circumstances in the balancing process `impermissibly limits the jury's consideration of mitigation evidence' and violates the Eighth Amendment." Conner v. State, 632 So.2d 1239, 1272 (Miss. 1993), citing McKoy v. North Carolina, 494 U.S. 433, 442-44, 110 S.Ct. 1227, 1233-34, 108 L.Ed.2d 369 (1990).
This Court has previously rejected attacks on sentencing instruction S-1 for its failure to clearly state that mitigating circumstances need not be unanimously found in order to be considered by individual jurors. Chase v. State, 645 So.2d 829, 851-853 (Miss. 1994); Conner v. State, 632 So.2d at 1271-73; Hansen v. State, 592 So.2d 114, 149-150 (Miss. 1991); Willie v. State, 585 So.2d at 680; Turner v. State, 573 So.2d at 668; Ladner v. State, 584 So.2d at 760; Shell v. State, 554 So.2d 887 (Miss. 1989). This case differs, however, in that it is the first instance in which we are faced with the rejection of an instruction which properly states the law. In the instant case, the words "unanimously" or "unanimous" are found throughout the aggravating circumstances portion of the jury instruction. However, in the mitigation portion of the jury instruction there is no mention of the degree of consensus required. Where the jury is instructed that aggravating circumstances must be found unanimously, and receives no instruction concerning the degree of consensus required of the mitigating circumstances, reasonable jurors may conclude that mitigating circumstances must also be determined unanimously. Indeed, the North Carolina Court held as much in State v. McNeil, 327 N.C. 388, 395 S.E.2d 106 (1990). See also Brantley v. State, 262 Ga. 786, 427 S.E.2d 758 (1993); Engberg v. Meyer, 820 P.2d 70 (Wyo. 1991).
While we rejected the reasoning of these courts in Hansen and its progeny, those were cases in which no proper defense instruction was offered. See Conner v. State, 632 So.2d 1239, 1272-73 (Miss. 1993); Hansen v. State, 592 So.2d 114 (Miss. 1991), cert. denied, 504 U.S. 921, 112 S.Ct. 1970, 118 L.Ed.2d 570 (1992); Ladner v. State, 584 So.2d 743, 760 (Miss. 1991); Willie v. State, 585 So.2d 660, 661 (Miss. 1991); Turner v. State, 573 So.2d 657, 668 (Miss. 1990), cert. denied, 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991).
In reviewing the record, there does not appear to be a rational or articulable basis for the trial court's refusal of instruction DS-4. Although instruction S-1 does not require unanimity for a finding of mitigating circumstances, it does not follow, nor is there any *1240 case law or statutory law which provides, that an instruction which specifically states that unanimity is not required should be precluded. Simply stated, instruction DS-4 is an unambiguous correct statement of the law and should have been granted for these reasons. Because it was not, I dissent.
Finally, instruction S-1 is seriously defective for another reason. It utterly fails to instruct the jury as to what it should do should it fail to achieve unanimity. The majority opinion admits that the instruction is ambiguous. While Blue failed to properly preserve this issue, I must note that I reject the view that the trial court's obligation to dismiss the jury after a reasonable period of deliberation serves to cure this defect in the jury instruction. See King v. State, 421 So.2d 1009 (Miss. 1982). I fear that continued inattention to instruction S-1 for procedural error will result in an enormous waste of resources. See also Russell v. State, 670 So.2d 816 (Miss. 1995) (Banks, J., dissenting).
SULLIVAN, P.J., and McRAE, J., join this opinion.
NOTES
[1] Miss. Code Ann. § 99-19-105(3)(a) provides:

(3) With regard to the sentence, the [Mississippi Supreme] Court shall determine:
(a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor.
[2] In his motion, Blue alleged that because he was seventeen years old, he should have had a parent present during the interrogations as required under Miss. Code Ann. § 43-21-303(3) (1972), particularly after his mother requested to see him.
[3] Blue obtained a full-scale IQ of 67 on the Wechsler Adult Intelligence Test. Blue was found to be extremely deficient in terms of reading and spelling, but was found to have a better measure of ability in arithmetic.
[4] Referring to the Miranda rights enunciated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] Blue's mother testified that Blue drank a half-pint of gin and a forty-ounce bottle of beer between 10:00 a.m. and 2:00 p.m. on the date of his arrest.
[6] Rule 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
[7] In Louisiana, a person found guilty of first-degree murder is sentenced by the same jury in a separate proceeding to either life imprisonment without benefit of parole, probation, or suspension of sentence or death. A sentence of death shall not be imposed unless the jury finds beyond a reasonable doubt that at least one of the ten established statutory aggravating circumstance exists and, after consideration of any mitigating circumstances, recommends that the sentence of death be imposed. La.Code Crim.Pro.Ann., art. 905.3 (West 1984). The jury is not required to weigh aggravating circumstances against mitigating circumstances. Stringer v. Black, 503 U.S. 222, 233, 112 S.Ct. 1130, 1138, 117 L.Ed.2d 367 (1992). By contrast, in Mississippi, the death penalty shall not be imposed until a two-prong test has been satisfied. First, the jury must make a written finding that the defendant either killed the victim, attempted to kill the victim, contemplated that lethal force be used or intended to kill the victim. Miss. Code Ann. § 99-19-101(2)(a) and (7)(a)(b)(c)(d). Upon making this finding the jury must then unanimously find that there are insufficient mitigating circumstances to outweigh the aggravating circumstances. Miss. Code Ann. § 99-19-101(3)(c).
[8] In Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), the United States Supreme Court invalidated a death sentence based upon the aggravating circumstance that the killing was "outrageously or wantonly vile, horrible and inhuman." The Court found the formulation to be vague and imprecise, inviting arbitrary and capricious application of the death penalty in violation of the Eighth Amendment.
[9] The conviction was not used "per se." Rather, that he was still serving a lawful sentence for a prior conviction was used. It happens that the prior conviction and the present sentence is related to the same offense, but they are separate.
[*] Case was originally affirmed in this Court but on remand from U.S. Supreme Court, case was remanded by this Court for a new sentencing hearing.